STATE OF NORTH CAROLINA v. DWIGHT EUGENE HUNT

No. 8918SC1092

(Filed 7 August 1990)

1. **Assault and Battery § 27 (NCI4th); Riot and Inciting to Riot § 2.1 (NCI3d) — assault with deadly weapon — felonious rioting — sufficiency of evidence**

   Evidence was sufficient to be submitted to the jury in a prosecution of defendant for assault with a deadly weapon inflicting serious injury and for felonious rioting where it tended to show that defendant and three or four other men harassed three girls in a truck at a fast food drive-through; defendant was fighting with others who were present; he pulled a knife with a three-inch blade and cut three victims; and the wounds were severe. N.C.G.S. §§ 14-32(a), 14-288.2.

   **Am Jur 2d, Assault and Battery § 92; Mobs and Riots § 23.**

2. **Criminal Law § 66 (NCI3d) — prior inconsistent out of court identification — requested instruction not given**

   The trial court properly instructed the jury with respect to a prior inconsistent out of court identification and properly refused to give an instruction requested by defendant, as that instruction was inapplicable.

   **Am Jur 2d, Evidence § 371.**

3. **Assault and Battery § 116 (NCI4th) — assault with deadly weapon charged — instruction on simple assault not required**

   The trial court in a prosecution for felonious assaults was not required to instruct on simple assault where several witnesses testified to the fact that defendant cut his victims with a knife and that their injuries were serious.

   **Am Jur 2d, Assault and Battery § 53; Trial §§ 878, 880.**

STATE v. HUNT

[100 N.C. App. 43 (1990)]

4. **Criminal Law § 829 (NCI4th)— no evidence of companions' guilty pleas—instruction not required**

Because no evidence of the guilty pleas of defendant's companions to the crimes in question was presented at trial, the trial court correctly concluded that to insert such information in the jury charge would be prejudicial to the State because it would not have the opportunity to rebut this evidence.

Am Jur 2d, Trial § 809.

5. **Criminal Law § 884 (NCI4th)— requested instruction not timely—failure to preserve assignment for appellate review**

Where defense counsel waited to request an instruction and object to its omission until after the jury had retired, he failed to preserve this assignment of error for appeal. Appellate Rule 10(b)(2).

Am Jur 2d, Trial § 911.

6. **Criminal Law § 773 (NCI4th)— defense of intoxication—burden on defendant—instruction proper**

The trial court did not err in instructing the jury that defendant had the burden of establishing the defense of intoxication, and defendant failed to preserve this assignment of error by noting his objection in the record before the jury retired. Appellate Rule 10(b)(2).

Am Jur 2d, Trial §§ 743, 744.

7. **Criminal Law § 865 (NCI4th)— jury instructions—admonition not to take strong position**

The trial court did not err in instructing the jury not to "stake themselves out" on a strong position immediately upon entering the jury room.

Am Jur 2d, Trial §§ 574, 656, 672.

APPEAL by defendant from a judgment entered 25 May 1989 in Superior Court, GUILFORD County by *Judge James M. Long.* Heard in the Court of Appeals 30 May 1990.

Defendant was charged with assault with a deadly weapon inflicting serious injury, assault with a deadly weapon with intent to kill, inflicting serious injury, and felonious rioting. Defendant

was convicted of three counts of assault with a deadly weapon inflicting serious injury and felonious rioting. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Valerie B. Spalding, for the State.*

*Robert S. Cahoon for the defendant-appellant.*

LEWIS, Judge.

The facts presented at trial and pertinent to this appeal are as follows:

Elizabeth Sledge testified that on the night of 30 October 1988, she and her friends Josie Morton and Kelly Farmer drove to a local fast food restaurant in Greensboro. Ms. Sledge testified that she and her friends were in line at the drive-through window when four men approached her driver's window. The men banged on the window, demanding to know the girls' names and to be let in. She identified the defendant as one of the four men who had approached her car. She further testified that she called for help from two of her friends, Kyle Pertuis and Jeff Garback, who were also in a truck in the parking lot. As Pertuis and Garback approached the passenger side of the truck, a fight broke out and Ms. Sledge saw the defendant with a knife. She identified two of the other men in photographs and also saw the men who were injured in the fight, but did not see any of them with weapons.

Josie Morton, who was with Ms. Sledge, identified defendant as one of the group. She stated that she heard John Weiler tell defendant to leave everyone alone. She then saw defendant strike Weiler then pull out a white-handled deer knife, stab Weiler in the face, then throw the knife behind a shed in the parking lot. At that time, the girls pulled up to the drive-through window and told employees to call the police. After driving around, the girls observed the defendant walking onto High Point Road. Josie identified photographs of John Weiler and Peter Ampuja taken after they had been injured. She described three of the group of four men who harassed the girls as dark-complected, and defendant as different because he had blond hair.

Tripp Cowles, Todd Watson, Kyle Pertuis, John Weiler, and Peter Ampuja responded to the girls' request for help. Tripp Cowles identified the defendant as one of the four men who was harassing the girls. Cowles further testified that he saw defendant punch

John Weiler in the face. He also saw a cut on Weiler's face and defendant with a knife.

Kyle Pertuis testified that he saw defendant hit Weiler in the face and then saw defendant holding a knife. Pertuis saw that Ampuja and Weiler were badly cut.

Peter Ampuja saw Weiler in a fight with two of the men and went to his assistance. He saw Weiler without a knife walk away with his whole face "bloodied up." Ampuja testified that he approached the group of men and tried to take things under control; two of the men came up to him and began to fight. One of the men had blond hair and the defendant was the only man there with blond hair.

Kelly Farmer testified that she saw the defendant "come over from behind . . . with a knife and start slashing," cutting both Weiler and Ampuja on the face. She testified that she saw no one else with a knife.

Three other witnesses saw the defendant with a knife and there was evidence that none of the victims were armed.

### I. Denial of Defendant's Motions to Dismiss and For Nonsuit

[1] Defendant argues first that there was insufficient evidence to submit any of the charges to the jury or to sustain convictions of three counts of assault with a deadly weapon inflicting serious injury and one count of felonious rioting. We disagree.

The elements of assault with a deadly weapon with intent to kill are (1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death. G.S. § 14-32(a); *State v. Cain*, 79 N.C. App. 35, 46, 338 S.E.2d 898, 905, *disc. rev. denied*, 316 N.C. 380, 342 S.E.2d 899 (1986). Under G.S. § 14-32(b), intent is not a prescribed element of assault with a deadly weapon inflicting serious injury. *State v. Curie*, 19 N.C. App. 17, 20, 198 S.E.2d 28, 30 (1973). A knife with a three-inch blade constitutes a deadly weapon *per se* when used as a weapon in an assault. *State v. Cox*, 11 N.C. App. 377, 380, 181 S.E.2d 205, 207 (1971). Considering the evidence in the light most favorable to the defense, we find that the evidence was sufficient to go to the jury and uphold a conviction for assault with a deadly weapon on John Weiler, Todd Watson and Peter Ampuja. It was for the

jury to sort out any discrepancies and assign weight to the testimony given. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

G.S. § 14-288.2 provides:

(a) A riot is a public disturbance involving an assemblage of three or more persons which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property . . .

(c) Any person who willfully engages in a riot is guilty of a Class I felony, if: . . .

(2) Such participant in the riot has in his possession any dangerous weapon or substance.

Several of the witnesses testified that they saw defendant in the company of three or four men harassing the girls in the truck. They also testified that defendant was fighting with the others present and that he pulled a knife and cut the three victims. The knife was identified at trial. Photographic evidence as well as testimony from treating personnel confirmed the severity of the knife wounds. This evidence was sufficient to go to the jury on a charge of felonious rioting. The trial court did not err by refusing to grant defendant's motion for a nonsuit or dismissal.

II. Instructions on Inconsistent Out-of-Court Identifications

[2] The trial court instructed the jury as set forth in Pattern Jury Instruction No. 104.90, Identification of a Defendant as Perpetrator of a Crime. The trial court refused to include the following portion of that instruction:

You may take into account in your consideration of the credibility of any identification witness any occasion upon which the witness failed to make identification of the defendant and/or any occasion on which the witness made an identification not consistent with his in-court identification.

N.C. Pattern Jury Instruction 104.90 (March 1986). Defendant argues that the court erred in omitting this portion of the instruction. Evidence at trial tended to show that Todd Watson and John Weiler told police while they were being treated at the hospital for their injuries that someone other than the defendant had stabbed them.

The trial court refused to give the above-quoted instruction because it relates to photographic or police lineup identification. *See* Note 3, N.C. Pattern Jury Instruction 104.90 (March 1986). Instead, the judge instructed:

> I need to instruct you further that when evidence has been received tending to show that at an earlier time a witness made a statement which may be consistent with or which may be inconsistent with his or her testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because that statement was not made under oath at this trial. . . . If you believe that such earlier statement was made and that it is consistent with or inconsistent with the testimony of that witness at this trial, then you may consider this, together with all other facts and circumstances bearing upon the witnesses' truthfulness in deciding whether you will believe or disbelieve his or her testimony at this trial.

We find that this instruction was sufficient to instruct the jury in this instance. The trial court did not abuse its discretion in refusing to instruct as the defendant requested.

### III. Failure to Charge on Simple Assault

[3] Defendant argues that the trial court should have instructed on simple assault because "there was evidence upon which the jury could have concluded that" the defendant struck Weiler, Watson and Ampuja, but did not use a deadly weapon. Under G.S. § 14-32, a conviction for felonious assault requires a showing that a deadly weapon was used and that serious injury resulted. If only one of these is shown, then the offense is punishable only as a misdemeanor under G.S. § 14-33. *State v. Owens*, 65 N.C. App. 107, 111, 308 S.E.2d 494, 498 (1983).

We find that the State presented more than enough evidence of both the use of a deadly weapon and resulting serious injury in all three assaults. Two eyewitnesses saw defendant cut Weiler's face with a knife. Several witnesses testified to the seriousness of his injuries. Watson testified both in and out of court that defendant was the one who cut him with a knife. His injuries were described by an emergency room attendant. Ampuja testified that he was unarmed and that he felt his ear being cut and noticed a blond man to his right. Another witness saw defendant approach

Ampuja swinging a knife. Under these circumstances the trial court was not required to charge on simple assault. *State v. Daniels*, 38 N.C. App. 382, 247 S.E.2d 770 (1978).

IV. Refusal to Allow Jury to Know
That Three Others Had Pled Guilty to
the Same Crimes For Which Defendant was on Trial

[4] At the close of all of the evidence the trial court directed counsel to research the issue of whether the court should take judicial notice of the guilty pleas entered by the defendant's companions, and whether this information should be disclosed to the jury. After hearing arguments, defense counsel moved to reopen the trial so that the court could take judicial notice of the guilty pleas and inform the jury that defendant's companions had entered guilty pleas for the same crimes for which defendant was being tried. The court denied this motion and charged the jury that it should not speculate as to why defendant's companions did not testify at his trial or why they were not tried with him. Defendant argues that the denial of his motion was prejudicial to his defense. However, it should be noted that the trial court raised this issue *sua sponte*. Defendant made no effort during trial to put on evidence that his companions had pled guilty to the same offenses, nor did he request the court to take judicial notice of their pleas. Because no evidence of their guilty pleas was presented at trial, the trial court correctly concluded that to insert such information in the jury charge would be prejudicial to the State because it would not have the opportunity to rebut this evidence. The trial court may only instruct the jury as to the law arising on the evidence given in the case.

V. Failure to Instruct That John Weiler's
Written Statement was Substantive

[5] John Weiler did not testify at trial, but an unsworn written statement was admitted into evidence. This statement indicated that someone other than the defendant had stabbed him. Defendant argues that the trial court's failure to instruct the jury to consider this statement as substantive was prejudicial. Defendant made this request to the court after the jury had retired to deliberate. N.C.R. App. P. 10(b)(2) states, "A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict. . . ." The record indicates that there was a conference off the record with the judge.

However, counsel failed to note any objections to the instruction on the record before the jury retired. Because the record shows that defense counsel waited to request the instruction and object to its omission until after the jury had retired, he failed to preserve this assignment of error for appeal.

## VI. Instruction on Defense of Intoxication

[6] Defendant argues that the trial court improperly instructed the jury that he had the burden of establishing the defense of intoxication. We disagree. As shown above, defense counsel failed to preserve this assignment of error by noting his objection on the record *before* the jury retired. N.C.R. App. P. 10(b)(2). Furthermore, "a defendant who wishes to raise [the defense of voluntary intoxication] has the burden of producing evidence . . . of his intoxication." *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536-37 (1988); *State v. McQueen*, 324 N.C. 118, 377 S.E.2d 38 (1989). This assignment is overruled.

## VII. Instructing the Jury Not to Stake Themselves Out on a Strong Position Immediately Upon Entering the Jury Room

[7] The defendant contends that the trial court's instruction not to "stake themselves out" unduly interfered with the function, deliberations, and freedom of expression of each juror. In fact, every juror should be willing to hear what all members have to say; if only one vote could be taken, few if any jury verdicts would ever be returned. Mere failure to follow form instructions is not reversible error. *State v. Sanders*, 81 N.C. App. 438, 344 S.E.2d 592, *disc. rev. denied*, 318 N.C. 419, 349 S.E.2d 604 (1986). After giving the above admonition, the trial court went on to instruct that "no person is required to compromise his or her conviction for the purpose of reaching a unanimous verdict. As a matter of fact, that would be in violation of your oath." We find that the trial court did not err.

## VIII. and IX.

Defendant appeals the failure of the trial court to set aside the guilty verdicts and for entering judgment on the guilty verdict, relying on the arguments set forth above. For the reasons previously discussed in this opinion, we overrule these assignments of error.

X. Conclusion

The defendant received a fair trial free of prejudicial error.

Affirmed.

Judges ORR and GREENE concur.