IN THE MATTER OF DEBBIE SUE ELLER

———————

IN THE MATTER OF NIKKI LOVE GREER

No. 403A91

(Filed 25 June 1992)

**Schools § 15 (NCI3d)— disruptive behavior—juvenile adjudication**

The trial court erred by not dismissing two juvenile petitions where respondent Greer was observed by her teacher making a move toward another student, which caused the student to dodge; the teacher finished giving the assignment at the chalkboard, then approached Greer and asked to see what was in Greer's hand; Greer willingly and without delay gave the teacher a carpenter's nail; the same teacher subsequently had both respondents in a basic mathematics class with a total of four students; respondents struck the metal shroud of the radiator more than two or three times, producing a rattling, metallic noise that caused the other students to look

IN RE ELLER

[331 N.C. 714 (1992)]

to that location and the teacher to interrupt her lecture for 15 to 20 seconds each time the noise was made; the teacher did not intervene other than to stare silently at respondents and then resume her teaching; the teacher reported the incident to the school principal the next day or the following afternoon; and the principal filed juvenile petitions alleging delinquency. The radiator and nail incidents do not qualify as "disorderly conduct" as defined in N.C.G.S. § 14-288.4(a)(6) as a matter of law.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 54.**

APPEAL as of right by respondent-juveniles pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 103 N.C. App. 625, 406 S.E.2d 299 (1991), affirming the orders of Helms (Michael E.), J., entered 13 July 1990, in District Court, ASHE County. Petition for discretionary review by respondent-juvenile Greer as to an additional issue was allowed by the Court on 6 November 1991. Heard in the Supreme Court 11 May 1992.

*Lacy H. Thornburg, Attorney General, by Jane Rankin Thompson, Assistant Attorney General, for the State, petitioner-appellee.*

*John T. Kilby for respondent-juvenile-appellant Eller.*

*Grier J. Hurley for respondent-juvenile-appellant Greer.*

MEYER, Justice.

The facts pertinent to this case are as follows. On 30 January 1990, respondent Greer, then a fourteen-year-old student at Beaver Creek High School in Ashe County, attended a basic special education reading class taught by Ms. Linda Weant. There were five students in the classroom. While giving a reading assignment at the chalkboard, Ms. Weant observed Greer make a move toward another student, who was separated by an aisle, causing the other student to dodge Greer's move. Ms. Weant finished relating the assignment, then approached Greer and asked Greer to show her what was in Greer's hand. Greer thereupon "willingly" and without delay gave Ms. Weant a carpenter's nail. The other students observed the discussion and resumed their work when so requested by Ms. Weant.

**IN RE ELLER**

[331 N.C. 714 (1992)]

On 1 March 1990, Ms. Weant taught her basic mathematics class to four students, including respondents Greer and Eller (fifteen years old at the time). Greer and Eller were seated at the rear of the classroom with their peers in a single, horizontal row parallel to the rear wall situated near a radiator located on the wall. During the course of their instruction time, Greer and Eller "more than two or three times" struck the metal shroud of the radiator. Ms. Weant testified that she saw each child strike the radiator at least once. Each time contact was made, a rattling, metallic noise was produced that caused the other students to look "toward where the sound was coming from" and caused Ms. Weant to interrupt her lecture for fifteen to twenty seconds each time the noise was made. Ms. Weant did not intervene other than to silently stare at Greer and Eller for fifteen to twenty seconds and then resume her teaching. She did, however, report the incident to the school principal that afternoon or the following day.

Pamela Scott, principal of Beaver Creek High School, subsequently filed juvenile petitions alleging delinquency on the part of respondents. Respondent Greer was alleged to be a delinquent under N.C.G.S. § 7A-517(12) in that the radiator and the nail incidents amounted to disorderly conduct within an educational institution in violation of N.C.G.S. § 14-288.4(a)(6). Respondent Eller was alleged to be a delinquent by virtue of her engaging in the radiator incident alone. Judge Michael Helms, after making findings of fact, concluded that each student violated N.C.G.S. § 14-288.4(a)(6) in that each intentionally caused an actual and material interference with the program of educational instruction at Beaver Creek High School, and therefore adjudicated the girls as delinquents. Pursuant to this determination, the court placed each juvenile on probation and mandated numerous special conditions.

The Court of Appeals agreed with the lower court, finding as a matter of law that respondents' behavior with regard to the radiator amounted to disorderly conduct in violation of N.C.G.S. § 14-288.4(a)(6). *In re Eller*, 103 N.C. App. 625, 406 S.E.2d 299 (1991). Judge Parker dissented from this holding, stating that "striking the radiator in a class of four students does not as a matter of law constitute a substantial disruption of the teaching program." *Id.* at 628, 406 S.E.2d at 300 (Parker, J., dissenting). By virtue of Judge Parker's dissent, respondents appeal as of right the issue of whether the radiator incident constituted disorderly conduct. Subsequent to the holding of the Court of Appeals, counsel for

## IN RE ELLER

[331 N.C. 714 (1992)]

respondent Greer filed a petition for discretionary review to determine whether the radiator incident, in tandem with the nail incident, the latter discussed by neither the majority nor the dissenting opinion of the Court of Appeals, satisfy the requirements of N.C.G.S. § 14-288.4(a)(6). We granted this petition and now decide whether the nail and radiator incidents, as alleged in the juvenile petitions, constitute disorderly conduct such as to justify the lower court's conclusion of law.

Respondent-appellants contend that the disruptive behaviors in which they engaged do not qualify as a "substantial interference" and that therefore the trial court erred in not dismissing the charge that they violated N.C.G.S. § 14-288.4(a)(6) and in adjudicating them as delinquents.

In order to withstand a motion to dismiss charges contained in a juvenile petition, there must exist substantial evidence of each of the material elements of the offense alleged. *In re Bass*, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985). The evidence must be considered in the light most favorable to the State, and the State is entitled to receive every reasonable inference of fact that may be drawn from the evidence. *State v. Easterling*, 300 N.C. 594, 268 S.E.2d 800 (1980).

N.C.G.S. § 14-288.4(a)(6) provides as follows:

(a) Disorderly conduct is a public disturbance intentionally caused by any person who:

. . . .

(6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.

N.C.G.S. § 14-288.4(a)(6) (Supp. 1991).

On a previous occasion, in which we construed former N.C.G.S. § 14-273, which made it a misdemeanor to "interrupt or disturb any public . . . school," we stated that the words in the statute "are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise." *State v. Wiggins*, 272 N.C. 147, 153, 158 S.E.2d 37, 42 (1967) (construing

**IN RE ELLER**

[331 N.C. 714 (1992)]

N.C.G.S. § 14-273 (1953) (repealed 1971) ), *cert. denied*, 390 U.S. 1028, 20 L. Ed. 2d 285 (1968). Proceeding to interpret the terms of the statute, we stated:

> When the words "interrupt" and "disturb" are used in conjunction with the word "school," they mean to a person of ordinary intelligence a *substantial interference* with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled.

*Id.* at 154, 158 S.E.2d at 42 (emphasis added).[1]

Under the instant facts, we conclude that the State has not produced substantial evidence that the respondents' behavior consituted a "substantial interference."[2] Indeed, the radiator incident merited no intervention by the instructor other than glares of disapproval for a total of at most sixty seconds during the entire class period. The relative insignificance of the behavior is borne out by the fact that Ms. Weant waited as long as until the following day to report respondents' activities to the school principal. Similarly, the nail incident was not so egregious an interference as to amount to a "substantial interference." Greer "willingly" and without delay forfeited the nail, and the other students were only modestly interrupted from their work and returned to their lesson upon being instructed to do so by their teacher. Thus, we conclude that the evidence, seen in a light most favorable to the State, is insufficient to establish each of the material elements of the offense charged. *In re Bass*, 77 N.C. App. at 115, 334 S.E.2d at 782.

Support for our decision today is found in previous decisions by this Court as well as by the Court of Appeals. In *State v.*

---

1. We do not consider it significant that the word "interrupt" does not appear in N.C.G.S. § 14-288.4(a)(6). Its absence does not alter the interpretation provided by the *Wiggins* Court and therefore has no bearing on our decision here.

2. In its brief, the State argues that the instant juvenile petitions were the product of a "pattern of misconduct" engaged in by the respondents and that we should consider this "pattern" in reviewing the delinquency adjudications. In particular, respondent Greer had thirty-four referrals for misconduct in one year and twice had been assigned to the in-school suspension program. Respondent Eller was also subjected to numerous disciplinary measures, including demerits, lunch detention, time-out periods, and two in-school suspensions. This notwithstanding, we are constrained to interpret the law within the context of the particular offenses alleged in the juvenile petitions themselves, to wit, the radiator and nail incidents. If the legislature had intended us to do otherwise, it could have expressly so provided.

*Wiggins,* 272 N.C. 147, 158 S.E.2d 37, we considered a case wherein the student-defendants demonstrated with signs pertaining to civil rights in front of a high school during school hours. The other students " 'look[ed] and carr[ied] on' to such an extent that the principal had 'to get them back to their classes and walk up and down the hall . . . trying to keep them in class.' " *Id.* at 151, 158 S.E.2d at 40. Once inside the classrooms, the students peered out the windows to observe the demonstration; a number of students went so far as to travel to other classrooms to gain a better vantage point. *Id.* This Court upheld the lower court's conviction for disorderly conduct. Even more disruptive behavior was considered by the Court of Appeals in *State v. Midgett,* 8 N.C. App. 230, 174 S.E.2d 124 (1970). There, twelve students entered the school secretary's office and informed the secretary that " 'they were going to interrupt [school] that day.' " *Id.* at 233, 174 S.E.2d at 126. The secretary then left her office to summon help, and upon her return, she was unable to reenter her office. The defendants occupied the principal's office, moved office furniture in front of the doors and windows, and rang school bells at unofficial times. As a result, school was dismissed early due to the commotion. *Id.* The Court of Appeals upheld the disorderly conduct convictions for substantial interference with the school in violation of the former N.C.G.S. § 14-273.

Respondents' behavior in the instant case pales in comparison to that encountered in *Wiggins* and *Midgett,* and those cases are readily distinguishable on their facts. Here, even the small classes in which respondents perpetrated their disruptive behavior were not interrupted for any appreciable length of time or in any significant way, and the students' actions merited only relatively mild intervention by their teacher. We agree with respondents that while egregious behavior such as that condemned in *Wiggins* and *Midgett* is not required to violate N.C.G.S. § 14-288.4(a)(6), more than that present in the case at bar is necessary. *See also In re Grubb,* 103 N.C. App. 452, 405 S.E.2d 797 (1991) (finding that talking in class does not constitute a violation of N.C.G.S. § 14-288.4(a)(6) ).

Further support for our view is found in the location of N.C.G.S. § 14-288.4(a)(6) within our statute books. The statute is contained within Article 36A, which concerns "Riots and Civil Disorders." This article was passed by our legislature in 1969, amid the concern generated by the tumult of the dramatic civil unrest gripping the nation and this state in the late 1960s. *See Sykes v. Clayton,* 274

N.C. 398, 163 S.E.2d 775 (1968) (title of act may be considered in aid of statutory construction to show intent of legislature); *Ellis v. Greene*, 191 N.C. 761, 133 S.E. 395 (1926) (same). To say that the relatively modest disturbances caused by respondents in the instant case do not rise to this level of concern would appear self-evident.

Because we conclude as a matter of law that the radiator and nail incidents do not qualify as "disorderly conduct" as defined in N.C.G.S. § 14-288.4(a)(6) and that therefore the trial court erred in not dismissing the juvenile petitions, we need not consider respondents' second claimed error that the trial court erred in adjudicating the respondents delinquent when the evidence was insufficient to prove the State's case beyond a reasonable doubt.

For the foregoing reasons, we reverse the opinion of the Court of Appeals and remand this case to the District Court, Ashe County, for proceedings not inconsistent with this opinion.

Reversed and remanded.