IN RE: R.L.F.
No. COA03-1052
North Carolina Court of Appeals
Filed July 20, 2004
This case not for publication
Forsyth County No. 02 J 285.
Attorney General Roy Cooper, by Associate Attorney General Stormie D. Forte, for the State.
James P. Hill, Jr. for juvenile appellant.
WYNN, Judge.
Juvenile appeals from adjudication and disposition orders of the trial court adjudicating her delinquent and placing her on probation. Juvenile argues there was insufficient evidence to show she committed assault with a deadly weapon, the offense upon which the delinquency order was based. Juvenile further contends she received ineffective assistance of counsel. For the reasons stated herein, we affirm the orders of the trial court.
At the delinquency hearing, the State presented evidence tending to show that on 25 August 2002, the fifteen-year-old Juvenile engaged in an altercation with her father, Robert. Robert testified he received a telephone call from his former wife,Juvenile's mother, "asking [him] to come try to talk to [Juvenile] because of things that were going on." Juvenile's mother explained that Juvenile had argued with her stepfather and subsequently damaged his vehicle. Robert arrived at the residence where Juvenile lived with her mother and stepfather and admonished Juvenile for her behavior. Juvenile "became upset, and she walked off and went back inside the house." Both Robert and Juvenile's mother attempted to talk to her, but the conversation escalated into "a lot of yelling." Robert then "picked [Juvenile] up and placed her in a chair, stood over her, and continued to try to talk to her." Both Robert and Juvenile continued to yell at each other, and Juvenile "put[] her hand in [his] face." Robert "lost it" and began
yelling and screaming, upset at the fact that she . . . put her hands up at me in my face like that, and when I asked her not to do it, you know, she taunted me like, what [are] you going to do? What [are] you going to do? What [are] you going to do?
And I went to grab her, the chair fell over, I started falling, I caught myself from falling; and we got up from there, and she  she was saying something, she was, I'm not sure exactly what she was saying.
Juvenile attempted to leave the residence, but Robert stopped her by briefly holding her against a wall. When he released her, Juvenile entered the kitchen, picked up a knife, and held it up before her with a "stabbing type of motion." Robert followed Juvenile into the kitchen and told her, "if that's what you want to do, do it, do it." Juvenile then "made a couple of motions like she was going to" stab Robert, and he "wrestle[d] her to theground, twisted her arm and took the knife from her." Robert testified Juvenile made the stabbing motions near his neck area, and that he grabbed the knife because he "didn't know if she was going to stab [him] or not." In the process of removing the knife from Juvenile's grip, Robert cut his thumb. After he took the knife from Juvenile, he released her. Juvenile summoned law enforcement. According to Robert, Juvenile stated, "I'm going to kill this MF."
Officer James J. Deeney of the Winston-Salem Police Department responded to the scene and spoke with Juvenile. Juvenile told Officer Deeney that "her father put her in the seat and tried to grab her and restrain her and keep her in the seat[,]" whereupon she went to the kitchen, grabbed a knife, "put the knife to her dad's throat and said what are you going to do."
Juvenile's mother testified on behalf of Juvenile. She described the incident between Juvenile and her father as follows:
[Juvenile] went to the kitchen, and during this whole time these  a lot of words were going on, a lot of cussing back and forth between the both of them, you know. And she had [gone] into the kitchen and grabbed a knife and said, now what [are] you going to do? Now what [are] you going to do? She just held the knife.
And [Robert] walked up to her with the knife . . . in her hand, and said, you think you [sic] bad, you [sic] going to put a knife on somebody, you better use it, you know, like he made the statement to her like that.
. . . .
And she was mouthing back and cussing back at the same time, you know, there was a lot of fussing going on. And in the process of him walking up to the knife, you know, he grabbed it, twist[ed] it, put her on the floor and that was that as far as the incident withthe knife is concerned.
Juvenile's mother stated the knife was "near [Robert's] throat, but it was not on his throat" but that Juvenile "didn't put it there, he walked up to it with the knife there in her hand." On rebuttal, Officer Deeney testified that, directly following the incident, Juvenile's mother told him it was her daughter who approached Robert with the knife in her hand.
Juvenile testified she went to the kitchen and retrieved the knife after her father pinned her against the wall. She "held the knife up and . . . said, `[W]hat [are] you going to do now?'" Robert told her that if "[you're] going to use a knife, you better use it." He then twisted Juvenile's arm, took the knife from her hand, and held Juvenile to the ground. Juvenile testified that she picked up the knife because she was afraid of her father at that particular moment. Juvenile verified that she "grabbed the biggest knife in the kitchen" during the altercation, and that she did not lower the blade as her father approached. She also confirmed that her father cut his hand while attempting to take the knife away from her.
At the close of the evidence, the trial court found Juvenile to be delinquent due to assault with a deadly weapon and placed her on probation for a period of twelve months. Juvenile appealed.
Juvenile argues the State presented insufficient evidence that she assaulted her father, and that the trial court therefore erred by denying her motion to dismiss and adjudicating her delinquent. Juvenile further asserts she was denied effective assistance of counsel. For the reasons set forth herein, we affirm the orders of adjudication and disposition.
Juvenile contends the evidence was insufficient to show she assaulted her father. We note that, although counsel for Juvenile moved to dismiss the petition at the close of the State's evidence, trial counsel failed to renew this motion at the close of all the evidence. Under the Rules of Appellate Procedure, Juvenile is therefore barred on appeal from raising the issue of sufficiency of the evidence. See N.C. R. App. P. 10(b)(3) (2004) (providing that, where a criminal defendant makes a motion to dismiss after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, the motion for dismissal made at the close of the State's evidence is waived, and such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal); In re Hodge, 153 N.C. App. 102, 107, 568 S.E.2d 878, 881, appeal dismissed and disc. review denied, 356 N.C. 613, 574 S.E.2d 681 (2002). We nevertheless choose to review Juvenile's argument pursuant to the authority granted this Court under Rule 2 of the Rules of Appellate Procedure.
In order to withstand a motion to dismiss the charges contained in a juvenile petition, the State must present substantial evidence of each of the material elements of the offense alleged. In re Eller, 331 N.C. 714, 717, 417 S.E.2d 479, 481 (1992). "The evidence must be considered in the light mostfavorable to the State, and the State is entitled to receive every reasonable inference of fact that may be drawn from the evidence." Id. We must therefore determine whether the State presented substantial evidence of each element of the offense of assault with a deadly weapon.
"[A]ny person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault . . . he or she . . . uses a deadly weapon[.]" N.C. Gen. Stat. § 14-33(c)(1) (2003). As there is no specific statutory definition of assault in North Carolina, the crime is governed by the rules of common law. State v. Mitchell, 358 N.C. 63, 69-70, 592 S.E.2d 543, 547 (2004). An assault is defined as
"an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm."
Id. (quoting State v. Roberts, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967)).
Juvenile argues the evidence showed she did not initiate any physical contact with her father, that she repeatedly attempted to escape the situation, that her father was the aggressor, and that he at no time evinced any fear of bodily harm. We must disagree. There was substantial evidence from which the trial court could find that, after her father released her from her position against the wall, Juvenile "grabbed the biggest knife in the kitchen," held it up in the near vicinity of her father's throat, and made several"stabbing motions." A knife with a three-inch blade constitutes a deadly weapon per se when used as a weapon during an assault. State v. Hunt, 100 N.C. App. 43, 46, 394 S.E.2d 221, 223 (1990). Although Juvenile's father stated he was "not in fear" of his daughter during the altercation, he testified he removed the knife from Juvenile's grip because he "didn't want her to hurt herself or anyone else." He further admitted he did not know whether Juvenile would stab him or not. We agree with the State that his actions and testimony indicate Juvenile's father was seriously concerned for his physical safety, as well as the safety of others present, and that such concern amounted to fear of immediate bodily injury, regardless of whether Juvenile's father defined it as such. We conclude the trial court properly denied Juvenile's motion to dismiss and affirm the order adjudicating her delinquent.
By further assignment of error, Juvenile argues she was denied effective assistance of counsel, in that trial counsel did not renew the motion to dismiss the petition at the close of the evidence. Given our review of Juvenile's foregoing argument, however, this assignment of error is no longer valid.
The orders of adjudication and disposition by the trial court are hereby,
Affirmed.
Judges CALABRIA and LEVINSON concur.
Report per Rule 30(e).