MARTIN, Chief Judge.
Respondent appeals from a decision of the Robeson County District Court adjudicating him a delinquent juvenile as defined by G.S. § 7B-1501(7).
At the time of the incident, respondent was an eighth grade student at Lumberton Junior High School in Lumberton, North Carolina. While respondent's regular teacher was away and the class was with a substitute, respondent allegedly disrupted the class by getting out of his seat, changing the television channel from the approved channel, and talking excessively. The substitute reported the behavior to the regular teacher, who sent a discipline referral to the assistant principal the following day. Mr. Peavy, the assistant principal, called respondent to his office. His office was separated from the main hallway by a smaller hallway approximately six to seven feet in length. The small hallway connected three interior offices, one of which belonged to Officer Frank Scott, the School Resource Officer. Mr. Peavy informed respondent that he would receive a three-day suspension for his behavior. During the conversation, both Mr. Peavy and respondent began raising their voices. Officer Scott heard the raised voices from his office next door and went to investigate. Respondent then stated "fuck this shit." Mr. Peavy informed him he would receive additional days of suspension for his profanity, and respondent jumped up and went into the small hallway.
While in the hallway, respondent continued to talk loudly and use profane language. Respondent walked towards the main hall, and Officer Scott restrained him with handcuffs just as he reached it. There was conflicting evidence as to whether or not there were any other students in the main hall at the time. Mr. Peavy testified that classes were changing and students were walking by, but Officer Scott could not remember any other students present in the hall at the time.
Respondent was charged with disorderly conduct pursuant to G.S. §14-288.4(a)(6). The juvenile petition alleged only the incident in the assistant principal's office, not respondent's behavior in the classroom the day before. It described the offending behavior as "jumping up in Mr. Peavy's office and saying,'fuck the shit,' and then walking out of the principal's office" (as amended in open court on the State's motion).
The trial court found that respondent "engage[d] in conduct that disrupted the peace, order and discipline at Lumberton Junior High School, by jumping up while in Assist. Principal Peavy's office, using the `F' word three or four times, walking out during the middle of classes changing" and adjudicated respondent delinquent. The court extended respondent's existing probation by six months, ordered him to spend fourteen days in juvenile detention, and required him to submit to any out-of-home placement or other treatment as recommended by the Department of Juvenile Justice, specifically the Eckerd Youth Alternatives Program.
G.S. § 14-288.4(a)(6) defines disorderly conduct as "a public disturbance intentionally caused by any person who . . . (6) [d]isrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto." Our Supreme Court, in State v. Wiggins, 272 N.C. 147, 158 S.E.2d 37 (1967), cert. denied, 390 U.S. 1028, 20 L. Ed. 2d 285 (1968), described disorderly conduct as "a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." Id. at 154, 158 S.E.2d at 42. Although the Court inthat case was construing G.S. § 14-273 (repealed in 1983), the language also applies to G.S. § 14-288.4(a)(6). In re Eller, 331 N.C. 714, 717-18, 417 S.E.2d 479, 481-82 (1992); See also In re Grubb, 103 N.C. App. 452, 454, 405 S.E.2d 797, 798 (1991); In re Brown, 150 N.C. App. 127, 130, 562 S.E.2d 583, 585 (2002). The State argues that respondent's behavior in Mr. Peavy's office constituted a "substantial interference" with the school's course of instruction. We disagree.
The Supreme Court and this Court have found a substantial interference where classes have been so disrupted they are unable to continue. In Wiggins, a bricklaying class was effectively stopped because civil rights demonstrators were picketing outside the school and the teacher could not retain the students' attention. The classes inside the school building were also in a state of disorder because of the demonstration. In State v. Midgett, 8 N.C. App. 230, 174 S.E.2d 124 (1970), a group of students took over the school office, barricaded themselves in the office, turned over cabinets, and operated the school's bells at odd hours. School had to be let out early because of the disruption.
Minor classroom disruptions have been held insufficient to constitute disorderly conduct. Repeatedly knocking on a radiator during class was found not to be a substantial interference with the operation of a school and its course of instruction. In re Eller, 331 N.C. 714, 417 S.E.2d 479 (1992). Nor was talking loudly, causing the teacher to reprimand the student several timesduring class, considered a substantial interference. In re Grubb, 103 N.C. App. 452, 405 S.E.2d 797 (1991). Here, respondent's behavior in Mr. Peavy's office did not disrupt a classroom, interfere with the instruction of other students, or cause the dismissal of any class or the entire school.
Our courts have also found a substantial interference with the operation of a school where a student's conduct forces a teacher to leave his or her assigned duties and that conduct is exacerbated by the student's use of profanity. In In re Pineault, 152 N.C. App. 196, 566 S.E.2d 854 (2002), disc. review denied, 356 N.C. 302, 570 S.E.2d 728 (2002), a student was taken to the principal's office for his use of profanity towards the teacher and another student. The incident required "the attention of several school officials including the principal, teachers, and the assistant principal. As a consequence of respondent's behavior, these officials stopped teaching and performing various administrative duties to attend to him." Id. at 200, 566 S.E.2d at 857. The Court held that "given the severity and nature of respondent's language, coupled with the fact that Ms. Carlson was required to stop teaching her class for at least several minutes, . . . respondent's actions substantially interfered with the operation of Ms. Carlson's classroom in the manner contemplated in Wiggins." Id. at 199, 566 S.E.2d at 857. Similarly, in In re M.G., 156 N.C. App. 414, 576 S.E.2d 398 (2003), a student yelled profanity at a group of students in the hallway, and a teacher had to leave his assigned lunch duties to report the incident. He was away from his assigned post for several minutes. In the present case, however, no teacher had to leave other students to deal with respondent's behavior. The incident was contained mostly in Mr. Peavy's office and the interior hallway. Even if students were changing classes when Officer Scott restrained respondent in or near the main hallway, the students were between classes and no course of instruction was interrupted. Respondent's actions do not rise to the level of interference necessary to constitute a substantial interference with the operation of a school or its course of instruction. We cannot agree with the trial court that the evidence supported a finding of disorderly conduct as contemplated by G.S. § 14-288.4(a)(6) or by our Supreme Court in Wiggins, which must control our decision. Therefore, we are compelled to hold that the trial court should have granted respondent's motion to dismiss at the end of the State's evidence.
In light of our holding, we decline to address respondent's further assignments of error.
Reversed.
Judges McCullough and Steelman concur.
Report per Rule 30(e).