IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-6

No. COA20-434

Filed 4 January 2022

Randolph County, 15 CRS 052178

STATE OF NORTH CAROLINA

v.

CHRISTOPHER JASON THOMPSON, Defendant.

Appeal by Defendant from judgment entered 14 March 2019 by Judge V. Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 23 March 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Kimberly D. Potter, for the State.*

*Mark L. Hayes for defendant-appellant.*

MURPHY, Judge.

A trial court properly denies a defendant's motion to dismiss a charge of felony fleeing to elude arrest when there is sufficient evidence, in the light most favorable to the State, that, *inter alia*, the arresting officers acted in the lawful performance of their duties. Here, the trial court properly denied Defendant's motion to dismiss where there was sufficient evidence, in the light most favorable to the State, that the officers were acting in lawful performance of their duties because they had a reasonable articulable suspicion to detain Defendant, had probable cause to arrest

Defendant, and complied with N.C.G.S. § 15A-401(e)(1) and (2).

## **BACKGROUND**

On 21 May 2015, Defendant Christopher Thompson drove his son to Liberty Elementary School. The two arrived shortly after the tardy bell rang and a school counselor, Tracey Whatley, had secured the doors. Whatley instructed Defendant's son to go to the front office to obtain a tardy slip. Defendant instead instructed his son to go to class and stated, "I am your tardy note." After Whatley informed Defendant his son would not be let inside the school without a tardy slip, Defendant went to the front office with his son.

At the front office, Defendant yelled, cursed, and argued with school staff, maintaining that his son should not "get a tardy." Defendant's son was taken to class eventually without a tardy, while Defendant remained in the front office. A few minutes later, the principal, Jordi Roman, arrived at the front office and, because there were students in the area and Defendant was still using profanity in a raised voice, asked Defendant to step outside of the building. Defendant did not leave right away and continued using profanity. Roman asked Defendant to step outside a second time, and he instructed his secretary to call the police and clear the office. After this occurred, Defendant complied with the request to go outside. Outside the building, Defendant continued to argue with Roman. Defendant seemingly decided he wanted to leave with his son and requested his son be brought outside. After

multiple requests, Defendant's son was brought outside. Several police officers arrived as Defendant got into his truck with his son.

¶ 4        Upon arrival, Liberty Police Chief David Semrad noticed that bystanders were looking towards Defendant's truck and that Roman was standing outside near the truck. In light of the police call for a school disturbance and his observations, Chief Semrad concluded Defendant was the source of the reported disturbance, approached Defendant, and told him he was being detained. Shortly thereafter, Chief Semrad discussed the situation with Roman, and Roman asked Chief Semrad to ban Defendant from the property. Chief Semrad then asked Officer Jason Phillips to obtain Defendant's identification for the ban sheet. Officer Phillips approached Defendant's truck, which was running, and asked Defendant for his identification; however, Defendant stated he was not legally required to provide his identification and provided his full name. Officer Phillips requested Officer Hubert Elder to assist him at Defendant's truck, and Officer Elder told Defendant he could either provide his license or go to jail. Defendant asked "under what North Carolina state law," and Officer Elder raised his voice, responding for "obstructing my investigation."

¶ 5        When Chief Semrad heard Officer Elder raise his voice, he approached Defendant's truck because he felt they had "reached a point where . . . an arrest may be warranted." Chief Semrad ordered Defendant to get out of his truck. Defendant refused to exit his truck, and Chief Semrad attempted to open the locked truck door.

Officer Elder stated he saw Defendant "grab for the gearshift," so he reached inside Defendant's truck and attempted to obtain the keys from the ignition. Defendant pushed Officer Elder's arm into the truck's dash, and Chief Semrad reached into the truck and grabbed Defendant's head and arm in an attempt to break Defendant's grip from Officer Elder. The vehicle abruptly accelerated forward, and Officer Elder testified that "[Defendant's] left arm momentarily came and pinned [Officer Elder] so that [he] could not retract." Defendant then put the vehicle in reverse and backed up, at which point Officer Elder disengaged from the vehicle. Defendant drove away from the school at a high speed, with the police briefly in pursuit. However, after realizing Defendant's son was in the truck, the police stopped pursuing Defendant. Shortly after the police stopped pursuing Defendant, Defendant crashed his truck and was subsequently arrested.

¶ 6      As a result of this incident, Defendant was indicted for feloniously "operat[ing] a motor vehicle on a highway, . . . while fleeing and attempting to elude a law enforcement officer, Officer H. Elder, in the lawful performance of the officer's duties" in violation of N.C.G.S. § 20-141.5.[1] On 7 March 2018, Defendant filed a pre-trial

---

[1] In the indictment, Defendant's charge for violating N.C.G.S. § 20-141.5 was elevated to a felony based on the aggravated factors of "speeding in excess of 15 miles per hour over the legal speed limit," "driving recklessly in violation of [N.C.G.S. §] 20-140," and "driving with a child under 12 years of age in the vehicle." *See* N.C.G.S. § 20-141.5(b)(1), (3), & (8) (2019).

*Motion to Suppress* all evidence obtained, arguing his attempted arrest was unlawful. The motion was denied on 8 March 2019 based on the trial court's finding that Defendant's detention was lawful. At the close of the State's evidence, Defendant made a motion to dismiss based on the insufficiency of the evidence. The trial court denied Defendant's motion to dismiss. At the close of all evidence, Defendant renewed his motion to dismiss, and the trial court again denied his motion. Defendant was convicted of felony fleeing to elude arrest. On 14 March 2019, the trial court sentenced Defendant to a suspended sentence of 6 to 17 months. Defendant timely appealed.

## ANALYSIS

On appeal, Defendant argues the trial court erred in denying his motion to dismiss because the State did not present sufficient evidence that the officers were acting in the lawful performance of their duties.[2] Specifically, Defendant argues the officers acted unlawfully because (A) "they had no reasonable suspicion to detain [Defendant]"; (B) "they had no probable cause to arrest [Defendant]"; and (C) "the arrest, even if it was based on probable cause, did not comply with [N.C.G.S.] § 15A-

Defendant was also indicted on multiple counts of assault on a law enforcement officer but was found not guilty of the assault charges. Defendant does not raise any challenge related to the indictments on appeal.

[2] We note that Defendant does not challenge the denial of his *Motion to Suppress* on appeal.

401." We disagree.[3]

¶ 8 "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> Upon [the] defendant's motion for dismissal, the question for [us] is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.

*State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences . . . . Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (citations omitted).

¶ 9 Defendant was convicted of felonious fleeing to elude arrest pursuant to N.C.G.S. § 20-141.5. N.C.G.S. § 20-141.5 provides in relevant part:

> (a) It shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer *who is in the lawful performance of his duties*. Except as provided in subsection (b) of this section, violation of this

---

[3] We emphasize that we come to our conclusion under the standard of review applicable to motions to dismiss. *See State v. Mahatha*, 267 N.C. App. 355, 358, 832 S.E.2d 914, 918 (2019) (applying the standard of review for a motion to dismiss for insufficiency of the evidence, and not discussing the standard of review for a motion to suppress).

section shall be a Class 1 misdemeanor.

(b) If two or more of the following aggravating factors are present at the time the violation occurs, violation of this section shall be a Class H felony.

N.C.G.S. § 20-141.5(a)-(b) (2019) (emphasis added). We address only whether the officers were in the lawful performance of their duties as it is the only element that Defendant challenges on appeal. *See* N.C. R. App. P. 28 ("Issues not presented and discussed in a party's brief are deemed abandoned.").

**A. Reasonable Articulable Suspicion**

Defendant first argues the police officers departed from the lawful performance of their duties because they lacked reasonable articulable suspicion to detain him.

"The Fourth Amendment protects individuals against unreasonable searches and seizures. The North Carolina Constitution provides similar protection." *State v. Hernandez*, 208 N.C. App. 591, 597, 704 S.E.2d 55, 59 (2010) (marks and citations omitted), *disc. rev. denied*, 365 N.C. 86, 731 S.E.2d 829 (2011). "'[B]rief investigatory detentions such as those involved in the stopping of a vehicle' are subject to Fourth Amendment protections." *Mahatha*, 267 N.C. App. at 358, 832 S.E.2d at 918 (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). "A police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert.*

*denied*, 555 U.S. 914, 172 L. Ed. 2d 198 (2008). "To determine whether this reasonable suspicion exists, a court must consider the totality of the circumstances[.]" *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 298 (2001) (citations and marks omitted). Reasonable articulable suspicion "must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70; *see also State v. Fleming*, 106 N.C. App. 165, 171, 415 S.E.2d 782, 785 (1992) (holding a violation of the Fourth Amendment occurred when the detaining officer "had only a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that [the] defendant was unfamiliar to the area").

¶ 12　　Here, Chief Semrad had a "reasonable, articulable suspicion that a crime"—specifically, disorderly conduct at a school in violation of N.C.G.S. § 14-288.4(a)(6)—"may be underway." *Barnard*, 184 N.C. App. at 29, 645 S.E.2d at 783. N.C.G.S. § 14-288.4(a)(6) reads:

> (a) Disorderly conduct is a public disturbance intentionally caused by any person who . . . :
>
> (6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.

N.C.G.S. § 14-288.4(a)(6) (2019). Our Supreme Court has interpreted this language, stating "[w]hen the words 'interrupt' and 'disturb' are used in conjunction with the word 'school,' they mean to a person of ordinary intelligence a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." *In re Eller*, 331 N.C. 714, 718, 417 S.E.2d 479, 482 (1992). We recently observed that this rule from *In re Eller* applies to both parts of the disjunctive—"[d]isrupts, disturbs or interferes with the teaching of students at any public or private educational institution" and "engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto"—in N.C.G.S. § 14-288.4(a)(6). *See State v. Humphreys*, 275 N.C. App. 788, 793, 853 S.E.2d 789, 793 (2020) (citing *In re Eller*, 331 N.C. at 718, 417 S.E.2d at 482; *In re Grubb*, 103 N.C. App. 452, 453-54, 405 S.E.2d 797, 798 (1991); *In re Brown*, 150 N.C. App. 127, 129-131, 562 S.E.2d 583, 585-586 (2002); *In re Pineault*, 152 N.C. App. 196, 199, 566 S.E.2d 854, 857, *disc. rev. denied*, 356 N.C. 302, 570 S.E.2d 728 (2002); *In re M.G.*, 156 N.C. App. 414, 416, 576 S.E.2d 398, 400-01 (2003); *In re S.M.*, 190 N.C. App. 579, 582-83, 660 S.E.2d 653, 655-56 (2008)).

¶ 13    Chief Semrad received information about a reported "disturbance" at the school, which "was almost unheard of with [Roman]" as he "had always gone out of his way not to involve law enforcement at the school." Upon his arrival at the school,

Chief Semrad noticed parents standing and looking towards Defendant's truck, as well as someone inside the school looking out the window towards the truck, Roman standing near the truck, and Defendant "staring intently at [Chief Semrad] in the side view mirror." Chief Semrad approached Defendant's vehicle, and Defendant asked Chief Semrad if he was being detained. After noting that the police were alerted that there was "a disturbance at the school and people were staring at the vehicle," Chief Semrad concluded Defendant "was the person involved in the disturbance" and "told [Defendant] that he was not free to leave, that he was detained."

¶ 14        Furthermore, when asked whether he had intended to charge Defendant with anything after he detained him, Chief Semrad testified, "we were still investigating the disturbance. We'd only had – or I'd only had a very brief conversation with an upset principal. I needed more specifics, more details, and I needed to know who else was involved and what the entire situation was." Chief Semrad instructed the other officers to obtain Defendant's identification while he "continued talking to Principal Roman trying to gather information in regard[] to . . . disorderly conduct, and that involves disturbing the school, cussing in the school, threatening actions, threatening behavior, disrupting staff, disrupting students, and that's definitely what I was hearing at the time from Mr. Roman." Chief Semrad was asked about his purpose in detaining Defendant and testified to the following:

[CHIEF SEMRAD:] It was clear to me that the school was still disrupted.

[THE STATE:] And you talked about the disturbance at school. You've been asked about your familiarity with certain laws this morning -- or this afternoon. Are you familiar with the law regarding public disturbance at school?

[CHIEF SEMRAD:] I believe that's North Carolina General Statute 14-288, Section 4 of that statute.

[THE STATE:] Was that something that you were investigating at the time?

[CHIEF SEMRAD:] Yes, sir.

¶ 15 Considering the evidence in the light most favorable to the State, under the totality of the circumstances Chief Semrad had a reasonable articulable suspicion that there was an ongoing "substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled" in violation of N.C.G.S. § 14-288.4(a)(6).[4] *In re Eller*, 331 N.C. at 718, 417 S.E.2d at 482 (1992). Chief Semrad lawfully detained Defendant for a brief investigatory stop. Consequently, for the purpose of the motion to dismiss, Defendant's detention was lawful and Chief Semrad was lawfully performing his duties.

---

[4] Defendant also argues that we should adopt a rule holding that *Terry* stops for a misdemeanor that has already been completed are per se unreasonable. However, viewing the evidence in the light most favorable to the State, the school disturbance was ongoing at the time of Defendant's detention. As a result, we need not reach this question.

## B. Probable Cause

¶ 16　　Defendant next argues that, even if the initial detention was lawful, Chief Semrad "still acted beyond the scope of his duties by arresting [Defendant]" without probable cause.

¶ 17　　Under N.C.G.S. § 15A-401(b)(1), "[a]n officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense . . . in the officer's presence." N.C.G.S. § 15A-401(b)(1) (2019). "An arrest is *constitutionally* valid whenever there exists probable cause to make it." *State v. Chadwick*, 149 N.C. App. 200, 202, 560 S.E.2d 207, 209, *disc. rev. denied*, 355 N.C. 752, 565 S.E.2d 672 (2002).

> Probable cause is defined as those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. The [United States] Supreme Court has explained that probable cause does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required. A probability of illegal activity, rather than a prima facie showing of illegal activity or proof of guilt, is sufficient.

*State v. Biber*, 365 N.C. 162, 168-69, 712 S.E.2d 874, 879 (2011) (marks and citations omitted).

¶ 18　　Our Supreme Court has held that

> when a law enforcement officer, by word or actions, indicates that an individual must remain in the officer's presence or come to the police station against his will, the person is for all practical purposes under arrest if there is a substantial imposition of the officer's will over the person's liberty.

*See State v. Zuniga*, 312 N.C. 251, 260, 322 S.E.2d 140, 145 (1984). Applying this principle here, an attempted arrest of Defendant occurred when Chief Semrad instructed Defendant to leave the truck, Defendant refused, and Chief Semrad and Officer Elder forcibly attempted to remove Defendant's keys from the ignition. These actions amounting to an attempted arrest occurred within approximately six seconds. After this sequence of events, Chief Semrad and Officer Elder, by their actions, had indicated that Defendant would be coming to the police station against his will. Both Chief Semrad and Officer Elder were attempting to arrest Defendant at this point. *See State v. Tilley*, 44 N.C. App. 313, 317, 260 S.E.2d 794, 797 (1979) (finding there was more than one arresting officer based on the facts of the case.").

¶ 19 Additionally, although Defendant's argument focuses on Chief Semrad lacking the authority to arrest him, the language of the indictment states Defendant was fleeing to elude Officer Elder, not Chief Semrad.[5] Despite both officers attempting to arrest Defendant, we focus only on the attempted arrest by Officer Elder here because Defendant was only indicted for fleeing to elude Officer Elder.

---

[5] We note that Defendant does not raise any argument related to the indictments.

N.C.G.S. § 20-29 provides:

> [a]ny person operating or in charge of a motor vehicle, when requested by an officer in uniform . . . who shall refuse to write his name for the purpose of identification or to give his name and address and the name and address of the owner of such vehicle, . . . or who shall refuse, on demand of such officer or such other person, to produce his license . . . shall be guilty of a Class 2 misdemeanor.

N.C.G.S. § 20-29 (2019). The Record demonstrates Officer Phillips and Officer Elder both made a lawful request for Defendant's driver's license pursuant to N.C.G.S. § 20-29. Defendant refused these requests and instead stated his full name. Defendant's refusal to comply with the officers' request under N.C.G.S. § 20-29 constituted a misdemeanor.[6] Since a misdemeanor under N.C.G.S. § 20-29 occurred within Officer Phillips' and Officer Elder's presence, for the purpose of the motion to dismiss, Officer Elder had probable cause to arrest Defendant pursuant to N.C.G.S. § 15A-401(b)(1).

---

[6] Defendant argues that he complied with N.C.G.S. § 20-29 by providing his name. We note that this statute lists several additional items not relevant to the issue here. However, each item listed in N.C.G.S. § 20-29 begins with "or who shall." N.C.G.S. § 20-29 (2019). Contrary to Defendant's reading, a plain reading of this language indicates that each action following "or who shall" is a Class 2 Misdemeanor. *See id.*; *see also State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (citations and marks omitted) ("The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. The first step in determining a statute's purpose is to examine the statute's plain language. Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning."). As a result, Defendant did not comply with N.C.G.S. § 20-29 by providing his name when his license was requested.

### C. N.C.G.S. § 15A-401(e)

¶ 21        Finally, Defendant argues the police officers failed to comply with N.C.G.S. § 15A-401(e) by failing to provide Defendant with notice of their authority and purpose for arresting him, and improperly using force to enter his vehicle. Defendant maintains that, as a result, the officers were no longer in the lawful performance of their duties when they attempted to arrest him and use force to enter his vehicle.

¶ 22        N.C.G.S. § 15A-401(e) provides in relevant part:

> (1) A law-enforcement officer may enter private premises or a vehicle to effect an arrest when:
>
> a. . . . the officer is authorized to arrest a person without a warrant or order having been issued,
>
> b. The officer has reasonable cause to believe the person to be arrested is present, and
>
> c. The officer has given, or made reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice would present a clear danger to human life.
>
> (2) The law-enforcement officer may use force to enter the premises or vehicle if he reasonably believes that admittance is being denied or unreasonably delayed, or if he is authorized under subsection (e)(1)c to enter without giving notice of his authority and purpose.

N.C.G.S. § 15A-401(e) (2019).

¶ 23        Officer Elder told Defendant to hand his license over or he would go to jail. According to Officer Elder's testimony, Defendant then asked, "under what North

Carolina state law," to which Officer Elder replied for "obstructing my investigation" and "attempted to tell [Defendant] that it was [N.C.G.S. §] 14-223. Resisting and obstructing." Officer Elder testified that he "was also going to add that it was under [N.C.G.S. §] 20-29 which requires if you're operating a motor vehicle and a law enforcement officer requests your ID, you must give it," but Defendant "attempted to talk over [Officer Elder and] admonished [him]." In the light most favorable to the State, the requirements of N.C.G.S. § 15A-401(e)(1)(a)-(b) are satisfied here because Officer Elder was authorized to arrest Defendant without a warrant pursuant to N.C.G.S. § 20-29 and N.C.G.S. § 15A-401(b)(1), as discussed in Part B above, and knew Defendant was present. Additionally, Officer Elder made reasonable efforts to give Defendant notice that he was going to be arrested for "unlawfully resist[ing], delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge a duty of his office" as required under N.C.G.S. § 15A-401(e)(1)(c). N.C.G.S. § 14-223 (2019).

¶ 24 Further, Chief Semrad testified he instructed Defendant to step out of his vehicle and Defendant refused. Chief Semrad then attempted to open Defendant's door; however, it was locked, and Defendant again refused to get out of his vehicle. Thereafter, Officer Elder testified he saw Defendant grab the gearshift, "[a]nd in order to try and prevent any escape [Officer Elder] [instinctively] reached for the keys[.]" Chief Semrad and Officer Elder both testified that Defendant refused their

entry into his vehicle on two occasions and Officer Elder believed he needed to confiscate Defendant's keys to prevent Defendant's escape, and the jury could have concluded that the officers reasonably believed admittance was being denied or unreasonably delayed. Accordingly, for the purpose of the motion to dismiss and in the light most favorable to the State, the officers were authorized to "use force to enter the . . . vehicle" and did not act unlawfully in doing so. N.C.G.S. § 15A-401(e)(2) (2019).

Viewing the evidence in the light most favorable to the State, the issue of whether the officers were performing their lawful duties was "sufficient for jury consideration." *Scott*, 356 N.C. at 597, 573 S.E.2d at 869. The trial court did not err by denying Defendant's motion to dismiss. *See Mahatha*, 267 N.C. App. at 360, 832 S.E.2d at 919 (holding the trial court did not err by denying the defendant's motion to dismiss for insufficient evidence when the officer "was lawfully performing his duties at the time of the stop").

## CONCLUSION

In the light most favorable to the State, there was sufficient evidence that the officers acted within the lawful performance of their duties, satisfying the challenged element of N.C.G.S. § 20-141.5(a). Accordingly, the trial court did not err in denying Defendant's motion to dismiss the charge of felony fleeing to elude arrest.

NO ERROR.

Judges DIETZ and GORE concur.