IN THE MATTER OF: CRYSTAL DAWN GRUBB, RESPONDENT-APPELLANT

No. 9023SC1065

(Filed 16 July 1991)

### Schools § 15 (NCI3d) — disrupting teaching of students — juvenile adjudication — insufficient evidence

Respondent juvenile's conduct did not substantially disrupt, disturb or interfere with the teaching of students at a public educational institution within the meaning of N.C.G.S. § 14-288.4(a)(6) so as to support an adjudication of delinquency where the state's evidence tended to show that the respondent was talking to another student in a loud and disruptive voice during a high school class; the teacher reprimanded respondent but she continued to talk; other students were distracted by the episode and started looking up from their work; and respondent stopped talking when the teacher asked her to do so a second time and told her to stay after class.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 23, 54; Schools §§ 263, 267.**

Judge ARNOLD dissenting.

APPEAL by respondent from order entered 13 July 1990 in ASHE County District Court by *Judge Michael E. Helms.* Heard in the Court of Appeals 16 April 1991.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Jane R. Thompson, for the State.*

*Kilby & Hodges, by Sherrie R. Hodges and Benjamin G. Hurley, Jr., for defendant-appellant.*

WYNN, Judge.

From an order imposing juvenile probation following her adjudication as a juvenile delinquent, respondent appeals. For the reasons that follow, the order is reversed.

Evidence for the State tended to show that on 26 March 1990, Crystal Grubb was a student at Beaver Creek High School in Ashe County, North Carolina. State's witness, Donna Hodges, testified that during class Crystal was talking to another student in a loud

and disruptive voice. Ms. Hodges reprimanded Crystal but she continued to talk. Other students were distracted by the episode and started looking up from their work. At that point, Ms. Hodges asked Crystal a second time to stop talking. Crystal looked at her, made a "smurky" face and shrugged her shoulders. Ms. Hodges then asked Crystal to stay after class, at which time Crystal stopped talking.

After class Ms. Hodges assigned a written report to Crystal to make up for the time missed from class. She did not turn in the assignment. Crystal was then referred to the assistant principal, Pamela Scott, for further disciplinary action. Ms. Scott subsequently filed a juvenile petition and Crystal was adjudicated as a juvenile delinquent. From that order, she appeals.

I

Respondent first contends that the trial judge abused his discretion by not granting her motion to dismiss at the close of the State's evidence. She contends that her conduct did not materially interfere with the class being taught.

A motion to dismiss a juvenile petition is recognized by North Carolina statutory and case law. N.C. Gen. Stat. § 7A-631 (1989) provides that "all rights afforded adult offenders" are conferred upon respondents in juvenile adjudication hearings, subject to certain exceptions which are not applicable to the case at bar. In *In re Dulaney*, 74 N.C. App. 587, 328 S.E.2d 904 (1985), this court held that a juvenile respondent "is entitled to have the evidence evaluated by the same standards as apply in criminal proceedings against adults." *Id.* at 588, 328 S.E.2d at 906.

As in adult proceedings, "[i]n order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged." *In re Bass*, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985); *see also State v. Myrick*, 306 N.C. 110, 291 S.E.2d 577 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact which may be drawn from the evidence. *State v. Easterling*, 300 N.C. 594, 268 S.E.2d 800 (1980).

In this case, respondent was charged with a violation of N.C. Gen. Stat. § 14-288.4(a)(6) (1990), which provides:

(a) Disorderly conduct is a public disturbance intentionally caused by any person who:

. . . .

   (6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.

The controlling case setting forth the definition of disruptive conduct is *State v. Wiggins*, 272 N.C. 147, 158 S.E.2d 37 (1967), *cert. denied*, 390 U.S. 1028, 88 S.Ct. 1418, 20 L.Ed. 2d 285 (1968). *Wiggins* was decided under N.C. Gen. Stat. § 14-273, which has been repealed. However, it is instructive as to the meaning of "disruptive conduct." Our Supreme Court said,

When the words "interrupt" and "disturb" are used in conjunction with the word "school," they mean to a person of ordinary intelligence a substantial interference with, disruption or and confusion of the operation of the school in its program of instruction and training of students there enrolled.

*Wiggins*, 272 N.C. at 154, 158 S.E.2d at 42. The fact that the word "interrupt" does not appear in the present statute does not change the plain meaning of the language contained therein. The conduct in question must substantially interfere with the operation of school.

An example of such conduct is contained in *State v. Midgett*, 8 N.C. App. 230, 174 S.E.2d 124 (1970). In *Midgett*, students locked the secretary to the principal out of her office, barred entry to the doors and windows with filing cabinets and tables and activated the bell system, resulting in the necessary early dismissal of the students from their classes. This court, applying the language in *Wiggins, supra*, held that the students had substantially interfered with the operation of school within the contemplation of N.C. Gen. Stat. § 14-273.

The conduct in the case at bar does not approach the conduct in *Midgett*. While the State contends that the incidents of 26 March 1990 were the last of several incidents of misbehavior by the respondent, the juvenile petition states that "*on or about 26 March 1990*, the juvenile did unlawfully, willfully and intentionally engage in disorderly conduct in a public building, to wit: . . . continued

## IN RE GRUBB

[103 N.C. App. 452 (1991)]

talking which disturbed, disrupted and interfered with the teaching of students." (emphasis added) Further, at the adjudication phase of the hearing, as to Crystal Dawn Grubb, the trial judge stated in open court, "I'm going to adjudicate her delinquent for the events alleged in the Petition occurring March 26, 1990, talking in class after being told to stop talking."

It should be noted that while the trial judge received evidence of repeated misconduct, such evidence was presented only during the disposition phase when Mrs. Scott testified, "There have been 22 referrals, formal teacher referrals." No evidence of repeated infractions was presented during the adjudication phase. We therefore conclude that the trial judge's finding in the juvenile order that, "The juvenile has been reported to the office numerous times this school year for infractions . . . ," is unsupported by evidence presented at the adjudication phase of the hearing. On the date in question, respondent stopped talking after being asked a second time and the class was only momentarily disrupted. This evidence even in the light most favorable to the State was insufficient to establish a violation of Section 14-288.4(a)(6) and respondent's motion to dismiss should have been granted.

For the foregoing reasons the adjudication of respondent as a juvenile delinquent is

Reversed.

Judge JOHNSON concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

The trial court found respondent to be in violation of N.C. Gen. Stat. § 14-288.4(a)(6) (1986). Intentional conduct which "[d]isrupts, disturbs or interferes with the teaching of students at any public or private educational institution" is addressed. G.S. § 14-288.4(a)(6). Based on the record before this Court respondent's actions "on or about 26 March 1990" come within the statute's ambit.

The majority fails to see that this proceeding is the culmination of extensive disciplinary efforts by the school administration. During its examination of a teacher the trial court inquired about

the general discipline options available to the school, specifically asking about in-school suspension, out-of-school suspension, detention hall and spanking.

The trial court found respondent's conduct was "an actual, material interference with part of the program of instruction" and her "purpose or intent on that occasion was that her conduct would have that effect." After this finding the trial court made the "unsupported" finding of fact mentioned by the majority which has its basis in the disposition phase. This finding of fact goes not to respondent's guilt or innocence, but to one of the special conditions of probation. Respondent is not to associate with four students whose names "on many of those occasions" were sent to the office as people involved with respondent in those numerous incidents. The trial court's findings of fact support the order issued and I would affirm.