IN THE MATTER OF: CHRISTOPHER BROWN

No. COA00-1501

(Filed 7 May 2002)

**Schools and Education— disorderly conduct—juvenile adjudication—insufficient evidence**

A middle school student's conduct did not constitute "disorderly conduct" within the meaning of N.C.G.S. § 14-288.4(a)(6) so as to support an adjudication of delinquency because it did not substantially interfere with the operation of the school where the student talked during a test, slammed a door, and begged in the hallway not to be sent to the office, and a class was without a teacher while this occurred.

Appeal by juvenile from order entered 15 August 2000 by Judge Shelly S. Holt in New Hanover County District Court. Heard in the Court of Appeals 4 December 2001.

*Hall, Horne & Sullivan, L.L.P., by Patrick J. Mulligan, IV, for juvenile appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Donna D. Smith, for the State.*

McCULLOUGH, Judge.

Respondent Christopher Brown was adjudicated delinquent on 8 August 2000 upon a violation of N.C. Gen. Stat. § 14-288.4(a)(6), prohibiting disorderly conduct involving schools, at the 8 August 2000 Session of New Hanover County District Court. Respondent was ordered to be placed on probation for a period of 6 months, complete 24 hours of community service, have no similar incidents to occur at school, and to continue in counseling.

The evidence for the State showed that on 17 March 2000, respondent was a student at Myrtle Grove Middle School. The teacher of his class was Katie Carbone, a student teacher at the time. On this day, Ms. Carbone was administering an algebra quiz.

According to Ms. Carbone, the class had been instructed that they would get a zero on the quiz if they talked during the quiz. Respondent was reprimanded "a time or two" for talking. Instead of

giving respondent a zero, however, Ms. Carbone took him to a different classroom to finish the test.

When the time to take the test had expired, Ms. Carbone went to retrieve the respondent and his test. She found the respondent talking to another student also taking the test outside the classroom and became upset. Ms. Carbone reminded respondent that she could give him a zero, to which he replied, "Well give me a zero."

Respondent headed back to the classroom and slammed the door behind him. The slam was described as "really really loud right in [Ms. Carbone's] face." At this point Ms. Carbone called respondent back into the hallway. She began to write a "referral slip" to send respondent to the office. At this point respondent began begging the teacher not to send him to the office. He was crying and attempting to stay in front of her in an attempt to prevent her from going to the office. His actions were described as "kind of throwing a temper tantrum." Respondent held Ms. Carbone's arm in his attempt to block her. After being asked three or four times, respondent released Ms. Carbone after she told him that, "if you don't get your hands on [sic] me you are really gonna be in trouble." Respondent then ran to the office. Ms. Carbone arrived shortly afterward. She finished her referral slip and reported to her superior. She then returned to her class, which had been unattended throughout the incident.

The student that respondent was speaking to in the hallway testified that respondent was reminding her to omit a certain problem on the quiz per Ms. Carbone's instructions when the teacher found them in the hallway. She and another student testified about respondent slamming the door as he entered the classroom and that the teacher got a referral slip and called respondent back out into the hallway. They described respondent's behavior as he and the teacher proceeded to the office. Their description matched that of Ms. Carbone's testimony in that respondent cried and protested being taken to the office.

Respondent testified at the hearing. He admitted slamming the door, although he said it was not his intent to slam the door or to do so in the teacher's face. He admitted to crying and being upset as he was being written up and taken to the office. Respondent explained that he was upset because his stepfather may hold him back a grade. Respondent's stepfather testified as to respondent's punishment and current behavior.

**IN RE BROWN**

[150 N.C. App. 127 (2002)]

At the time of the hearing, respondent was 13 years old. Respondent made a motion to dismiss the charges which was denied at the close of the State's evidence. The trial court found:

> That there was sufficient evidence to prove the juvenile did as set out in the petition.

> That on or about the 17th day of March 2000, the juvenile unlawfully and willfully did intentionally cause a public disturbance at Myrtle Grove Middle School, Wilmington, NC, by engaging in conduct which disturbs the peace, order or discipline at any public educational institution. This conduct consisted of the [respondent's] talking during a quiz, refusing to follow instructions; slamming the door in the teacher's face and tried to restrict her from going to the office. This is in violation of G.S. 14-288.4(a)(6).

I.

Respondent's sole assignment of error is that the trial court abused its discretion by denying respondent's motion to dismiss. Respondent contends that the record is devoid of any evidence of a substantial interruption of the course of instruction at the school.

"[I]n order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged." *In re Bass*, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985). The evidence must be considered in the light most favorable to the State, and the State is entitled to receive every reasonable inference of fact that may be drawn from the evidence. *State v. Easterling*, 300 N.C. 594, 268 S.E.2d 800 (1980).

N.C. Gen. Stat. § 14-288.4(a)(6) prohibits the following:

> (a) Disorderly conduct is a public disturbance intentionally caused by any person who:

> \* \* \* \*

> (6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.

N.C. Gen. Stat. § 14-288.4(a)(6) (1999).

The definitive case on the meaning of the "disruptive conduct" is *State v. Wiggins*, 272 N.C. 147, 158 S.E.2d 37 (1967), *cert. denied*, 390 U.S. 1028, 20 L. Ed. 2d 285 (1968) (construing N.C. Gen. Stat. § 14-273 (1953) (repealed 1971)). In *Wiggins*, our Supreme Court said,

> [w]hen the words "interrupt" and "disturb" are used in conjunction with the word "school," they mean to a person of ordinary intelligence a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled.

*Wiggins*, 272 N.C. at 154, 158 S.E.2d at 42.

This Court has continued to follow the *Wiggins* case since the enactment of the current disorderly conduct statute N.C. Gen. Stat. § 14-288.4. In *In re Grubb*, 103 N.C. App. 452, 405 S.E.2d 797 (1991), this Court said, "The fact that the word "interrupt" does not appear in the present statute does not change the plain meaning of the language contained therein. The conduct in question must substantially interfere with the operation of school." *Grubb*, 103 N.C. App. at 454, 405 S.E.2d at 798.

Previous decisions by this Court and the Supreme Court shed light on the level of interference required to sustain a conviction of disorderly conduct in the school scenario. In *Wiggins*, students picketed a high school. The students were protesting alleged racial inequality. Testimony in that case showed that classes stopped because students were leaving their seats and classrooms to see the demonstration. A class that was being conducted outside on the school grounds had to be canceled. The disorder in the entire school created as a direct result of the picketing sustained the convictions of the defendants of disorderly conduct. *Wiggins*, 272 N.C. at 150-52, 158 S.E.2d at 39-41.

In *State v. Midgett*, 8 N.C. App. 230, 174 S.E.2d 124 (1970), defendants took over the school office. In fact, they were so bold as to tell the school's secretary that "they were going to interrupt [the school] that day." *Midgett*, 8 N.C. App. at 231, 174 S.E.2d at 126. Defendants barricaded themselves in the office, overturned cabinets, and operated the school's bell system. *Id.* The disruption of the school's proper functioning was so great that it necessitated early dismissal. *Id.* at 233, 174 S.E.2d at 127. This Court held that the evidence "amply" satisfied the statute and affirmed the convictions. *Id.* at 234, 174 S.E.2d at 128.

On the other hand, this Court reversed a conviction (denial of motion to dismiss) of disorderly conduct under N.C. Gen. Stat. § 14-288.4(a)(6) in *Grubb*, 103 N.C. App. 452, 405 S.E.2d 797. Respondent momentarily disrupted class when she was talking loud during class. She had to be reprimanded several times before she would cease the loud talking. The *Grubb* Court held that this evidence alone was insufficient upon which to base a conviction, and respondent's motion to dismiss should have been granted.

The Supreme Court also reversed a disorderly conduct conviction for substantially interfering with school in *In re Eller*, 331 N.C. 714, 417 S.E.2d 479 (1992). In that case, the teacher saw one defendant swing something at another student. Upon first inquiry, that defendant willingly gave the teacher a carpenter's nail he had in his hand. On another occasion, that same defendant was joined by another student in banging the classroom's radiator while class was being conducted. They did so a couple of times, distracting the class of 15 each time. The Supreme Court held that the evidence did not show substantial interference within the meaning of *Wiggins. Id.* at 718, 417 S.E.2d at 482.

The evidence in the case *sub judice* shows a student who talked during a test, slammed a door, and begged a teacher in the hallway that he not be sent to the office. It is probable that some students were briefly distracted by the door slam and the sounds of a student crying in the hallway. We also note that the class was without its teacher while this occurred. The record does not reveal how long the teacher was away, but it does not seem to have lasted more than several minutes. We hold that this evidence is insufficient to show a substantial interference with the operation of the school.

This Court does not doubt that when students act as respondents in this case, they are troublesome and a burden in the classroom. These are the trials faced by teachers in today's schools. But if we were to hold that the present actions are of such gravity that they warrant a conviction of disorderly conduct, every child that is sent to the office for momentary lapses in behavior could be convicted under such precedent.

As the *Eller* Court stated,

while egregious behavior such as that condemned in *Wiggins* and *Midgett* is not required to violate N.C.G.S. § 14-288.4(a)(6), more than that present in the case at bar is necessary.

Further support for our view is found in the location of N.C.G.S. § 14-288.4(a)(6) within our statute books. The statute is contained within Article 36A, which concerns "Riots and Civil Disorders." This article was passed by our legislature in 1969, amid the concern generated by the tumult of the dramatic civil unrest gripping the nation and this state in the late 1960's. To say that the relatively modest disturbances caused by respondents in the instant case do not rise to this level of concern would appear self-evident.

*Eller*, 331 N.C. at 719-20, 417 S.E.2d at 483.

Because we hold it was error to deny respondent's motion to dismiss, the adjudication of respondent as a juvenile delinquent is

Reversed.

Judges GREENE and CAMPBELL concur.