IN THE MATTER OF: BRANDON PINEAULT

No. COA01-1152

(Filed 6 August 2002)

### 1. Juveniles— injury to real property—motion to dismiss—sufficiency of evidence

The trial court did not err by denying respondent juvenile's motion to dismiss the charge of injury to real property based on his kicking a door at school that caused damage to a wall, because there was sufficient evidence that respondent willfully and wantonly kicked the door which caused the damage.

### 2. Juveniles— disorderly conduct—motion to dismiss—sufficiency of evidence

The trial court did not err by denying respondent juvenile's motion to dismiss two charges of disorderly conduct based on his use of foul language in the classroom on 6 February 2001 and his behavior in the classroom and first aid room on 7 February 2001, because there was sufficient evidence that respondent's behavior interfered with the operation of the school including the nature and severity of respondent's language coupled with the fact that several school officials stopped teaching and performing various administrative duties to attend to respondent.

Appeal by juvenile from orders entered 23 March 2001 by Judge Spencer G. Key, Jr. in Stokes County District Court. Heard in the Court of Appeals 11 June 2002.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Susan K. Nichols, for petitioner-appellee.*

*R. Michael Bruce for respondent-appellant.*

HUNTER, Judge.

Brandon Pineault ("respondent") was adjudicated delinquent in the district court of Stokes County based upon violations of N.C. Gen. Stat. § 14-127 (2001), prohibiting injury to real property, and two counts of disorderly conduct in school pursuant to N.C. Gen. Stat. § 14-288.4(a)(6) (2001). We affirm.

Evidence at trial tended to establish that on 6 February 2001, respondent was a student at Piney Grove Middle School. Christine

**IN RE PINEAULT**

[152 N.C. App. 196 (2002)]

Carlson was the teacher at the time. On this day, Ms. Carlson was teaching mapping skills when she heard respondent tell another student, " '[f]—k you.' " Ms. Carlson escorted respondent to the principal's office. On the way to the office, respondent said, " '[f]—k you, b—h.' "

Ms. Carlson testified that on the following day, 7 February 2001, while she was on the phone with a parent, respondent began arguing with another student. Ms. Carlson's teacher's assistant attempted to resolve the situation. At that time, Ms. Carlson heard respondent say " '[f]—k off, bastard' " to the other student. Ms. Carlson escorted respondent to the principal's office. According to the testimony of Principal Roger Lee Tucker, respondent was detained in the first aid room because he was acting disorderly and the assistant principal and teachers were attempting to calm him down. Mr. Tucker instructed respondent to enter his office and respondent refused. Mr. Tucker then restrained respondent by holding him by his "trunk" and pinning his arms down to carry him into his office. While restrained, respondent began kicking, and eventually kicked a door, pushing the doorstop through the wall.

At the time of the hearing, respondent was thirteen years old. At the close of the evidence, respondent moved to dismiss the charges, which motion was denied. Respondent was given a curfew, placed on probation for a period of twelve months, ordered to undergo testing for alcohol and controlled substances, cooperate with residential and non-residential treatment programs, perform up to twenty hours of community service, submit to substance abuse monitoring, and participate in a life and educational skills program.

Respondent assigns four errors to the trial court's rulings: (1) the trial court erred in denying respondent's motion to dismiss the charge of injury to real property; (2) the charge of injury to real property was not proven beyond a reasonable doubt; (3) the trial court erred in denying respondent's motion to dismiss the two charges of disorderly conduct; and (4) the trial court erred in finding that the charges of disorderly conduct were proven beyond a reasonable doubt.

I.

[1] Respondent argues that the trial court erred in denying his motion to dismiss the charge of injury to real property for lack of sufficient evidence. Specifically, he asserts the State failed to prove

beyond a reasonable doubt that he willfully and wantonly damaged the property. We disagree.

It is well-settled that "in order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged." *In re Bass*, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985). The evidence must be considered in the light most favorable to the State, and the State is entitled to receive every reasonable inference of fact that may be drawn from the evidence. *State v. Easterling*, 300 N.C. 594, 604, 268 S.E.2d 800, 807 (1980).

N.C. Gen. Stat. § 14-127 provides that "[i]f any person shall willfully and wantonly damage, injure or destroy any real property whatsoever, either of a public or private nature, he shall be guilty of a Class 1 misdemeanor." *Id.* Respondent, in his brief, argues that there was no direct evidence of his intention to purposely and deliberately kick the door. We find there was sufficient evidence.

The term " ' "willful" as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of the law.' " *State v. Brackett*, 306 N.C. 138, 142, 291 S.E.2d 660, 662 (1982) (citation omitted). " 'Willfulness' is a state of mind which is seldom capable of direct proof, but which must be inferred from the circumstances of the particular case." *State v. Davis*, 86 N.C. App. 25, 30, 356 S.E.2d 607, 610 (1987). "Further, a person is presumed to intend the natural and foreseeable consequences of his unlawful acts." *Id.* at 30, 356 S.E.2d at 610.

Here, the State presented evidence that respondent "was being very belligerent, uncooperative," and "disruptive." Respondent kicked "indiscriminately" down the hall while being restrained. He kicked the door with such force as to cause the doorstop to punch a hole in the wall. Damage to the wall was a natural and foreseeable consequence of respondent kicking wildly down the hall. In viewing the evidence in the light most favorable to the State, we find there was sufficient evidence that respondent willfully and wantonly kicked the door which caused the damage. Therefore, we conclude respondent's motion to dismiss was properly denied.

II.

[2] Respondent next argues the trial court erred in finding the offenses of disorderly conduct had been proven beyond a reasonable

doubt. We disagree. Respondent was charged with two counts of disorderly conduct. The first count was based on his use of foul language in the classroom on 6 February 2001; the second count stems from his behavior in the classroom and first aid room on 7 February 2001.

N.C. Gen. Stat. § 14-288.4(a)(6) prohibits the following:

(a) Disorderly conduct is a public disturbance intentionally caused by any person who:

. . .

(6) Disrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.

N.C. Gen. Stat. § 14-288.4(a)(6). Our Supreme Court has held that the conduct must cause "a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled." *State v. Wiggins*, 272 N.C. 147, 154, 158 S.E.2d 37, 42 (1967); *see also, In re Eller*, 331 N.C. 714, 417 S.E.2d 479 (1992).

As to the first count, Ms. Carlson testified that while teaching mapping skills to her class on 6 February 2001, she heard respondent state, in a loud, angry voice, " '[f]—k you.' " Ms. Carlson was required to stop teaching the class and escort respondent to the principal's office. As Ms. Carlson escorted respondent out of her classroom, he twice said to her, " '[f]—k you, b——h,' " evincing a clear disrespect for her authority. While the record does not indicate how long Ms. Carlson was away from the classroom, it does establish that she escorted respondent to the principal's office and explained to office staff what had happened, thereby indicating she was away from the classroom for more than several minutes. We hold, given the severity and nature of respondent's language, coupled with the fact that Ms. Carlson was required to stop teaching her class for at least several minutes, that respondent's actions substantially interfered with the operation of Ms. Carlson's classroom in the manner contemplated in *Wiggins*.

As to the second count of disorderly conduct, the State presented evidence that respondent began arguing with another student while Ms. Carlson was on the telephone talking to a parent. He used pro-

CREEL v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[152 N.C. App. 200 (2002)]

fanity towards another student and was taken to the principal's office. According to the testimony of the principal, respondent was detained in the first aid room "because he was being disorderly and the assistant principal and the teachers w[ere] with him trying to calm him down." Further, he testified that respondent "was being very belligerent, uncooperative with my teachers, would not cooperate with me, would not come into my office calmly, jerked away from me, pulled away, [and] was being very disruptive." The extent of respondent's disruptive behavior is further evidenced by the fact that respondent's conduct required restraint by the principal. Moreover, his behavior required the attention of several school officials including the principal, teachers, and the assistant principal. As a consequence of respondent's behavior, these officials stopped teaching and performing various administrative duties to attend to him. Thus, we conclude that the evidence, viewed in the light most favorable to the State, was sufficient to establish that respondent's conduct substantially interfered with the operation of the school.[1] The trial court did not err in determining that respondent's behavior on both occasions constituted a violation of N.C. Gen. Stat. § 14-288.4(a)(6).

Affirmed.

Judges GREENE and TIMMONS-GOODSON concur.

---

JUSTIN MICHAEL CREEL, BY AND THROUGH HIS GUARDIAN AD LITEM, VICTOR H. MORGAN, JR., PLAINTIFF V. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, EMPLOYER, DEFENDANT

No. COA01-1058

(Filed 6 August 2002)

**Tort Claims Act— negligent acts of licensed foster parents— respondent superior—lack of jurisdiction**

The Industrial Commission did not err by dismissing based on lack of jurisdiction a case concluding that the North Carolina Department of Health and Human Services (DHHS) may not be

---

1. While this Court recently held that "a student who talked during a test, slammed a door, and begged a teacher in the hallway that he not be sent to the office," causing the teacher to be away from her classroom for "several" minutes did not amount to a "substantial interference with the operation of the school," *In re Brown,*

CREEL v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[152 N.C. App. 200 (2002)]

Appeal by plaintiff from an order entered 18 June 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 May 2002.

*Brumbaugh, Mu & King, P.A., by Richard A. Mu, for plaintiff-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Grady L. Balentine, Jr., for defendant-appellee.*

150 N.C. App. 127, 131, 562 S.E.2d 583, 586 (2002), this case is distinguishable. In *Brown*, the respondent's conduct occurred during an examination and at the end of the examination, not while the teacher was conducting class as in the case *sub judice. See id.* at 127-28, 562 S.E.2d at 584. Moreover, in *Brown*, neither the respondent's language nor his behavior was as egregious or severe as respondent's language in this case. Accordingly, *Brown* is not controlling here.