**IN RE S.M.**

[190 N.C. App. 579 (2008)]

IN RE: S.M.

No. COA07-1373

(Filed 20 May 2008)

**1. Appeal and Error— preservation of issues—sufficiency of evidence**

Although the State contends respondent juvenile waived review of the sufficiency of the evidence against her for the offense of disorderly conduct in a school, her counsel's vigorous argument, after resting her case, that the evidence was insufficient to support the charged offense was sufficient to preserve respondent's right to review.

**2. Juveniles— delinquency—burden of proof—motion to dismiss**

The trial court did not err in a juvenile delinquency case by allegedly failing to adjudicate a juvenile based on proof beyond a reasonable doubt when the written order stated the facts were proven beyond a reasonable doubt whereas the trial court's oral statements indicated it was considering the evidence in the light most favorable to the State, because although the court ultimately determines the existence of proof beyond a reasonable doubt of respondent's guilt, in considering a motion to dismiss, the evidence is examined in the light most favorable to the State.

**3. Juveniles— delinquency—disorderly conduct in school—sufficiency of evidence**

The trial court erred in a juvenile delinquency case by concluding there was sufficient evidence of respondent juvenile's guilt of disorderly conduct in a school because: (1) while appellate courts tend to uphold juvenile adjudications for disorderly conduct in school when there is evidence of the use of vulgar language by the student, aggressive or violent behavior by the juvenile, or disruptive behavior serious enough to require the student's teacher to leave the class unattended in order to discipline the student, adjudications have been reversed where the evidence shows no more than ordinary misbehavior or rule-breaking; (2) viewing the evidence in the light most favorable to the State in the instant case revealed that respondent and a friend were walking in the hall when they should have been in class; when asked to stop, they instead grinned, giggled, and ran

down the hall; respondent was stopped by the school resource officer after a brief chase down the hall; and a few students and teachers looked out into the hall while the resource officer was escorting respondent to the school office; (3) there was no evidence that the school or classroom instruction was substantially disrupted, that respondent was aggressive or violent, or that respondent used disturbing or vulgar language, but instead respondent and her friend were described several times as giggling or smiling; and (5) although respondent's behavior was an annoyance to the school administrator, it did not rise to the level of criminal activity.

Appeal by Respondent from judgment entered 5 June 2007 by Judge John Covolo in Nash County District Court. Heard in the Court of Appeals 3 April 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Susannah P. Holloway, for the State.*

*Peter Wood, for Respondent-Appellant.*

ARROWOOD, Judge.

Respondent, "S.M."[1] appeals from adjudication and disposition as a delinquent juvenile for disorderly conduct in a school, in violation of N.C. Gen. Stat. § 14-288.4(a)(6). We reverse.

At the hearing on this matter, the State's evidence tended to show, in relevant part, the following: Herman Ivory testified that he was the Dean of Students at Rocky Mount High School. On 6 October 2006 Ivory noticed two female students out in the hall during class hours, both wearing red jackets with hoods. When Ivory called out to them, the girls started "laughing and giggling," pulled up the hoods on their jackets, and went "running and laughing" away. Ivory responded by calling Officer T.C. Wilder, the school's resource officer.

Wilder testified that he was in the school office when Ivory called him to report two students roaming in the hall during class. Wilder "figured [he'd] go and try to look for them after [he] finished [handling another juvenile matter]." A few minutes later, the girls walked past the office and Ivory, who had returned to the office, told Wilder that these were the girls he had seen in the hall. Wilder asked the girls

---

1. To preserve the privacy of the juvenile, we refer to her in this opinion by the initials "S.M."

**IN RE S.M.**

[190 N.C. App. 579 (2008)]

several times to stop, saying "Hey you two" and "Girls, y'all stop." The girls just "grinned" and "smiled" and then headed down the hall. Wilder ran after them and caught Respondent at the end of the hall after a brief chase of 10-15 seconds. Wilder informed Respondent that she was "under arrest" and took her back to the office. He testified that as he escorted Respondent back to the office, he saw a few teachers and some students in the hall. At the office, Ivory asked her why she had been running in the hall, and Respondent had no answer.

Before the hearing, Respondent subpoenaed six teachers of the seven teachers with classrooms on the hall by the office, where Respondent was escorted by Wilder. The teachers did not honor the subpoenas, but each made a brief written statement to the effect that the teacher did not remember the incident in question. At the hearing, the State stipulated to the contents of these written statements. Respondent's evidence consisted of these statements. After the presentation of evidence, the trial court found Respondent guilty of disorderly conduct in a school, adjudicated her delinquent, and entered a dispositional order. From this disposition and adjudication, Respondent appeals.

## Standard of Review

"Where the juvenile moves to dismiss, the trial court must determine 'whether there is substantial evidence (1) of each essential element of the offense charged, . . . and (2) of [juvenile's] being the perpetrator of such offense.' " *In re Heil*, 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "In reviewing a motion to dismiss a juvenile petition, the evidence must be considered in the light most favorable to the State, which is entitled to every reasonable inference that may be drawn from the evidence." *In re B.D.N.*, 186 N.C. App. 108, 111-12, 649 S.E.2d 913, 915 (2007) (citing *In re Brown*, 150 N.C. App. 127, 129, 562 S.E.2d 583, 585 (2002)).

The dispositive issue in this case is the sufficiency of the evidence of Respondent's commission of the offense of disorderly conduct in a school.

[1] Preliminarily, we address the State's argument that Respondent waived review of the sufficiency of the evidence against her. At the close of the State's evidence, Respondent moved for dismissal for insufficient evidence, and her motion was denied. Respondent did not offer any witness testimony; her evidence consisted of the written

statements by several teachers. After Respondent introduced these statements, she rested her case and the trial court immediately asked "Would you like to be heard?" Respondent's counsel argued vigorously that the evidence was insufficient to support the charged offense. We conclude this is sufficient to preserve respondent's right to review.

**[2]** Respondent first argues that the trial court erred by failing to adjudicate her based on proof beyond a reasonable doubt. The adjudication order states that the facts were "proven beyond a reasonable doubt." Respondent nonetheless argues that the trial court erred because, in its response to Respondent's argument for dismissal, the court stated that it was considering the evidence "in the light, you know, most favorable to the State." The State agrees with Respondent that this was error, but argues that the error was corrected by the written order which controls over the trial court's oral statements. In fact, the court did not err by applying this standard.

Pursuant to N.C. Gen. Stat. § 7B-2409 (2007), "[t]he allegations of a petition alleging the juvenile is delinquent shall be proved beyond a reasonable doubt." Moreover, the court "is required to affirmatively state if it finds that the allegations in the petition have been proven beyond a reasonable doubt. N.C. Gen. Stat. § 7B-2411 [(2007)]." *In re C.B.*, 187 N.C. App. 803, 805, 654 S.E.2d 21, 23 (2007). However, as discussed above:

> "In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence."

*In re B.N.S.*, 182 N.C. App. 155, 157, 641 S.E.2d 411, 412 (2007) (quoting *State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005)). Thus, although the court ultimately determines the existence of proof beyond a reasonable doubt of a respondent's guilt, in considering a motion to dismiss, the evidence is examined in the light most favorable to the State. This assignment of error is overruled.

**[3]** We next consider whether there was sufficient evidence of the Respondent's guilt of disorderly conduct. Disorderly conduct in a school is defined by N.C. Gen. Stat. § 14-288.4(a)(6) (2007) as "a public disturbance intentionally caused by any person who . . . [d]isrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs

the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto."

*In re Eller*, 331 N.C. 714, 417 S.E.2d 479 (1992), is a leading case on the kind of behavior that properly may support an adjudication of delinquency based on disorderly conduct in school. In *Eller*, the North Carolina Supreme Court reviewed a decision by this Court that upheld an adjudication of delinquency based on evidence that the juvenile "[made] a move toward another student" while holding a nail in his hand, and repeatedly banged on a radiator, causing "a rattling metallic noise" that distracted the other students. *Id.* at 715-16, 417 S.E.2d at 481. The Court first discussed *State v. Wiggins*, 272 N.C. 147, 154, 158 S.E.2d 37, 42 (1967), in which it interpreted an earlier version of the disorderly conduct statute:

> [W]e stated that the words in the statute "are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise." Proceeding to interpret the terms of the statute, we stated: "When the words 'interrupt' and 'disturb' are used in conjunction with the word 'school,' they mean to a person of ordinary intelligence a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled."

*Eller*, 331 N.C. at 717, 417 S.E.2d at 481 (quoting *Wiggins*, 147 N.C. at 154, 158 S.E.2d at 42). "An example of such conduct [substantial interference] is contained in *State v. Midgett*, 8 N.C. App. 230, 174 S.E.2d 124 (1970). In *Midgett*, students locked the secretary to the principal out of her office, barred entry to the doors and windows with filing cabinets and tables and activated the bell system, resulting in the necessary early dismissal of the students from their classes. This court, applying the language in *Wiggins*, *supra*, held that the students had substantially interfered with the operation of school[.]" *In re Grubb*, 103 N.C. App. 452, 454, 405 S.E.2d 797, 798 (1991). Applying *Wiggins* to the facts in *Eller*, the Court held that the State had not produced "substantial evidence that the respondents' behavior constituted a 'substantial interference.' " *Eller*, 331 N.C. at 718, 417 S.E.2d at 482.

There is no 'bright line' test for what constitutes "substantial interference" with a school. However, appellate cases decided since *Eller* have tended to uphold juvenile adjudications for disorderly conduct in school when there is evidence of, *e.g.*, (1) the use of vulgar

IN RE S.M.

[190 N.C. App. 579 (2008)]

language by the student; (2) aggressive or violent behavior by the juvenile; or (3) disruptive behavior serious enough to require the student's teacher to leave her class unattended in order to discipline the student. Thus, in *In re Pineault*, 152 N.C. App. 196, 566 S.E.2d 854 (2002), this Court upheld the adjudication of a juvenile for disorderly conduct in school where there was evidence that:

> [Respondent's teacher] heard respondent state, in a loud, angry voice, "f— you." Ms. Carlson was required to stop teaching the class and escort respondent to the principal's office. . . . [Respondent] twice said to her, "f— you, b—ch," evincing a clear disrespect for her authority. . . . [Ms. Carlson] was away from the classroom for more than several minutes. We hold, given the severity and nature of respondent's language, coupled with the fact that Ms. Carlson was required to stop teaching her class for at least several minutes, that respondent's actions substantially interfered with the operation of Ms. Carlson's classroom[.]

*Id.* at 199, 566 S.E.2d at 857. *See also, e.g., In re M.G.*, 156 N.C. App. 414, 415, 576 S.E.2d 398, 399 (2003) (upholding adjudication where "teacher, heard respondent yell 'shut the f—k up' to a group of students" and "escorted Respondent to the school detention center").

On the other hand, adjudications have been reversed where the evidence shows no more than ordinary misbehavior or rule-breaking. For example, in *In re Brown*, the juvenile respondent was reprimanded for talking during a test. When his teacher found him again talking to another student she "became upset" and "reminded respondent that she could give him a zero, to which he replied, 'Well give me a zero.' " Thereafter:

> Respondent headed back to the classroom and slammed the door behind him. . . . Ms. Carbone called respondent back into the hallway. She began to write a 'referral slip' to send respondent to the office. . . . [R]espondent began begging the teacher not to send him to the office . . . crying and . . . [holding] Ms. Carbone's arm in his attempt to block her.

*Brown*, 150 N.C. App. at 128, 562 S.E.2d at 584. The respondent was adjudicated delinquent based on disorderly conduct in a school. On appeal, this Court held that the evidence was insufficient:

> The evidence in the case *sub judice* shows a student who talked during a test, slammed a door, and begged a teacher in the hallway that he not be sent to the office. . . . [W]hen students act as

respondents in this case, they are troublesome and a burden in the classroom. These are the trials faced by teachers in today's schools. But if we were to hold that the present actions are of such gravity that they warrant a conviction of disorderly conduct, every child that is sent to the office for momentary lapses in behavior could be convicted under such precedent.

*Id.* at 131, 562 S.E.2d at 586. Similarly, in *In re Grubb*, the Respondent "was talking to another student in a loud and disruptive voice" and refused to stop talking when asked by her teacher. *Grubb*, 103 N.C. at 452-53, 405 S.E.2d at 797. Instead, Respondent "made a 'smurky' face and shrugged her shoulders." *Id.* "Other students were distracted by the episode and started looking up from their work" when the Respondent would not stop talking in class. *Id.* This Court held this was insufficient to show a substantial disruption of the school:

The conduct in the case at bar does not approach the conduct in *Midgett.* . . . [R]espondent stopped talking after being asked a second time and the class was only momentarily disrupted. This evidence even in the light most favorable to the State was insufficient to establish a violation of Section 14-288.4(a)(6) and respondent's motion to dismiss should have been granted.

*Grubb*, 103 N.C. App. 454-55, 405 S.E.2d at 798-99.

The evidence in the present case, viewed in the light most favorable to the State, tended to show that: (1) Respondent and a friend were walking in the hall when they should have been in class; (2) when asked to stop, they instead grinned, giggled, and ran down the hall; (3) Respondent was stopped by the school resource officer after a brief chase down the hall; and (4) a few students and teachers looked out into the hall while the resource officer was escorting Respondent to the school office. There was no evidence that the school or classroom instruction was substantially disrupted, that Respondent was aggressive or violent; or that Respondent used disturbing or vulgar language. Indeed, Respondent and her friend were described several times as "giggling" or "smiling." We conclude that Respondent's behavior, although no doubt an annoyance to the school administrator, does not rise to the level of criminal activity.

In ruling on Respondent's motion to dismiss, the trial court agreed that Respondent's behavior was "borderline." The court appears to have been influenced by generalized social concerns about violence, even though the evidence bore no indicia of violence. The trial court expressed a concern about school violence nationwide,

asking "[H]ow many kids have walked onto school campuses in the last three years in the United States and shot up the campus?" and speculating on what might have happened if Respondent and her friend had "turned out to be some kind of psycho killers that went on that day to kill 15 students at Rocky Mount Senior High School." The trial court's generalized apprehension about school safety in today's world is understandable, given various highly-publicized incidents in the past few years. Fortunately, the instant case involved no violence, but only foolish mischief.

We conclude, based on the relevant precedent and our review of the facts in this case, that the trial court erred by denying Respondent's motion to dismiss and that the trial court's order of adjudication and disposition must be

Reversed.

Judges McCULLOUGH and STEELMAN concur.