An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-100

Filed 21 January 2026

Watauga County, No. 23JB000005-940

IN THE MATTER OF: A.B.T.

Appeal by Juvenile from Orders entered 27 August 2024 by Judge Matthew J. Rupp in Watauga County District Court. Heard in the Court of Appeals 24 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Carolyn McLain, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for Respondent Juvenile-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Annie[1] appeals from Adjudication and Disposition Orders finding her guilty of Disorderly Conduct and from an Order on Motions for Review concluding she violated the conditions of her probation. The Record before us tends to reflect the following:

On 7 May 2024, the State filed a Juvenile Petition alleging Annie committed the delinquent act of Disorderly Conduct in violation of N.C. Gen. Stat. § 14-288.4(a)(6) following an incident where Annie allegedly yelled profanities and "aggressively gesticulate[ed]" at faculty members at Watauga High School. The Petition alleged Annie "screamed profanity directed at Assistant Principals Erin White and Ashley Winkler[,]" "gesticulat[ed] with her arms and hands while continuing to yell and scream[,]" and "curs[ed] each adult present saying, 'fuck you' to each of them and displaying the middle finger." The Petition further alleged "[t]he staff in the adjacent offices were cleared out of their workspaces due to the juvenile's disruptive behavior." Additionally, because Annie was subject to a Probation Order at the time of the incident which required that she, among other things, remain on good behavior and not violate any laws, the State filed two Motions for Review alleging Annie had violated the conditions of her probation.[2]

Prior to the Adjudication hearing, Annie, through counsel, filed a Motion to Dismiss the Petition on the basis that N.C. Gen. Stat. § 14-288.4(a)(6) is

---

[1] A pseudonym agreed upon by the parties.
[2] Discussion of the underlying events which gave rise to the entry of that Probation Order is not necessary for disposition of the issue at bar.

unconstitutionally vague. The sole witness to testify at the 26 August 2024 Adjudication hearing was Assistant Principal Ashley Winkler (AP Winkler). AP Winkler testified that on the morning of 25 April 2024, Annie was brought into the office of Assistant Principal Erin White (AP White) and questioned about whether she had made the statement "I am glad that I wasn't at school on time this morning because I'm glad I didn't get searched."[3] Annie allegedly responded by saying, "I don't have anything on me. You can F-ing search me. Search my bag, I don't F-ing have anything[.]"

AP Winkler "stepped forward" to move several items from the corner of AP White's desk, including a bottle of soda belonging to Annie. AP Winkler took the cap off the soda, smelled it, said "[i]t smells like Dr. Pepper[,]" and asked Annie if she would like it back. Annie responded she did not "want it after you've had your nasty A [sic] nose in it." Annie allegedly "snatched" the soda from AP Winkler while AP Winkler was giving it back to her. At this point, the head principal joined the assistant principals in AP White's office.

According to AP Winkler, Annie's voice "went up in register[ ]" and became "elevated in terms of her tone." Annie remained seated, although she did "scoot[ ] forward in her chair." The school resource officer then "stepped into the doorway" and indicated he would have to intervene if Annie did not calm down. AP Winkler

---

[3] Some kind of contraband search had apparently been conducted on members of the student body earlier that morning, the details of which are not disclosed in the Record before us.

testified "two receptionists" were then "cleared out" of the front office and Annie "just repeatedly said, 'You can F-ing search me, I don't have anything.' " The incident concluded at some point after that.[4]

At the close of the State's evidence, counsel for Annie moved to dismiss the charge for insufficient evidence. The trial court denied the Motion. Annie then declined to put on evidence.

The trial court concluded Annie was guilty of "conduct which disturbed the peace, order or discipline at a public educational institution[.]" In rendering its decision, the trial court noted: "[Annie's] actions were so elevated and aggressive in tone it caused a school resource officer and the principal to respond and two school administrators, who are typically in the front office, to leave their duties where they normally are situated."

In the resulting Disposition Order, the trial court placed Annie on twelve months of probation. The trial court also ordered Annie to comply with an 8:00 p.m. curfew, not go "[a]nywhere deemed inappropriate by the Court Counsel or parent[,]" and cooperate with placement in a residential treatment facility. Additionally, the trial court found the allegations in the Motions for Review, which alleged Annie had violated the conditions of her existing Probation Order, had been proven by the

---

[4] No testimony was offered regarding the immediate resolution or aftermath of the incident.

greater weight of the evidence. The trial court stated its resolution of the Motions for Review would be to order Annie to comply with the terms in the Disposition Order.

Annie gave oral Notice of Appeal from the Adjudication Order, Disposition Order, and Order on Motions for Review in open court and filed written Notice of Appeal the following day.

## Issue

The dispositive issue on appeal is whether the trial court erred by denying Annie's Motion to Dismiss for insufficient evidence.

## Analysis

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State,

giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). "Whether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

"Evidence in the record supporting a contrary inference is not determinative on a motion to dismiss." *State v. Scott*, 356 N.C. 591, 598, 573 S.E.2d 866, 870 (2002) (citing *Fritsch*, 351 N.C. at 382, 526 S.E.2d at 457). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). "This is true even [where] the suspicion so aroused by the evidence is strong." *Id.* (citations omitted).

In the instant case, Annie argues there is insufficient evidence to support the Adjudication for Disorderly Conduct. Under our General Statutes, "disorderly conduct" is

> a public disturbance intentionally caused by any person who . . . [d]isrupts, disturbs or interferes with the teaching of students at any public or private educational institution or engages in conduct which disturbs the peace, order or discipline at any public or private educational institution or on the grounds adjacent thereto.

N.C. Gen. Stat. § 14-288.4(a)(6) (2023). "Our Supreme Court has held that the conduct must cause 'a substantial interference with, disruption of and confusion of the operation of the school in its program of instruction and training of students there enrolled.'" *In re Pineault*, 152 N.C. App. 196, 199, 566 S.E.2d 854, 857 (2002) (quoting *State v. Wiggins*, 272 N.C. 147, 154, 158 S.E.2d 37, 42 (1967)), *disc. review denied*, 356 N.C. 302, 570 S.E.2d 728 (2002); *see also In re Grubb*, 103 N.C. App. 452, 454, 405 S.E.2d 797, 798 (1991) ("The conduct in question must substantially interfere with the operation of school.").

"There is no 'bright line' test for what constitutes 'substantial interference' with a school." *In re S.M.*, 190 N.C. App. 579, 583, 660 S.E.2d 653, 656 (2008). Our appellate courts "have tended to uphold juvenile adjudications for disorderly conduct in school when there is evidence of, *e.g.,* (1) the use of vulgar language by the student; (2) aggressive or violent behavior by the juvenile; or (3) disruptive behavior serious enough to require the student's teacher to leave her class unattended in order to discipline the student." *Id.* at 583-84, 660 S.E.2d at 656. "However, an interference has been found not to be substantial when the interference was not extended or significant, and required little intervention to remedy." *State v. Humphreys*, 275 N.C. App. 788, 794, 853 S.E.2d 789, 793 (2020) (citing *In re Grubb*, 103 N.C. App. at 452-53, 405 S.E.2d at 797, *In re Eller*, 331 N.C. 714, 716, 417 S.E.2d 479, 481-82 (1992), *In re Brown*, 150 N.C. App. 127, 127-28, 562 S.E.2d 583, 584-85 (2002), and *In re S.M.*, 190 N.C. App. at 585, 660 S.E.2d at 657).

As a threshold matter, we note the State does not assert Annie's conduct interfered with the teaching of students. Thus, our analysis is centered on whether Annie's conduct caused a substantial interference with "the peace, order or discipline" at the high school. *See* N.C. Gen. Stat. § 14-288.4(a)(6) (2023). The State argues there is sufficient evidence to support the Adjudication because Annie (1) used vulgar language, (2) committed aggressive behavior by "snatching" her soda from AP Winkler, and (3) "caused two school administrators to flee their duties in the front office."

In cases where the student has used "vulgar language," there has also been evidence of some other disruption. For example, in *In re M.G.*, the Court affirmed an adjudication for disorderly conduct based on evidence that a teacher had heard the respondent-juvenile yell " 'shut the f--ck up' to a group of students" and resultantly "was away from his assigned duties for at least several minutes[ ]" in order to escort the respondent-juvenile to the school's detention center. 156 N.C. App. 414, 417, 576 S.E.2d 398, 400-01 (2003) (likening the facts of the case to *In re Pineault*).

Similarly, in *In re Pineault*, when the respondent-juvenile used profanity toward a teacher, the teacher "was required to stop teaching the class and escort respondent to the principal's office." 152 N.C. App. at 199, 566 S.E.2d at 857. The teacher "was away from the classroom for more than several minutes[,]" and the respondent-juvenile twice said " 'f--k you, b---h' " to the teacher. *Id.* The Court held, "given the severity and nature of respondent's language, coupled with the fact that

[the teacher] was required to stop teaching her class for at least several minutes, that respondent's actions substantially interfered with the operation of [the teacher's] classroom[.]" *Id.*

In the instant case, the State points to evidence that two receptionists left the front office at some point during Annie's outburst. The State argues the two receptionists "fled" the front office because Annie was yelling; however, at the hearing, AP Winkler testified the receptionists had been "cleared out" of the office. Ultimately, the Record is unclear as to whether the staff was asked to leave, left voluntarily, or left for reasons entirely unrelated to Annie's behavior. Importantly, aside from AP Winkler's testimony that it was "abnormal" for the receptionists to be absent, there was no evidence admitted showing whether the receptionists' temporary absence affected the school's operations in any way.

On this issue, we believe the facts of *In re Brown* are instructive. There, the respondent-juvenile was reprimanded for talking during a test. 150 N.C. App. at 127, 562 S.E.2d at 584. The respondent-juvenile was moved to a different classroom to finish taking his exam; however, his teacher later found him again talking to another student. *Id.* at 128, 562 S.E.2d at 584. The teacher "reminded respondent that she could give him a zero, to which he replied, 'Well give me a zero.'" *Id.* The respondent-juvenile "headed back to the classroom and slammed the door behind him[,] . . . really loud right in [the teacher's] face." *Id.* When the teacher "began to write a 'referral slip' to send respondent to the office[,]" the respondent-juvenile "began begging the

teacher not to send him to the office." *Id.* The respondent-juvenile physically held the teacher's arm in his attempt to block her, and "[h]is actions were described as 'kind of throwing a temper tantrum.' " *Id.* The Court noted that although the respondent-juvenile's behavior likely distracted multiple students and caused the class to be without its teacher for several minutes, this was "insufficient to show a substantial interference with the operation of the school." *Id.* at 131, 562 S.E.2d at 586.

Similarly, in *In re Grubb*, the respondent-juvenile "was talking to another student in a loud and disruptive voice[ ]" and refused to stop talking when asked by her teacher. 103 N.C. App. at 452-53, 405 S.E.2d at 797. Although the respondent-juvenile's conduct distracted other students, this Court held this was insufficient to support an adjudication for disorderly conduct because the respondent-juvenile "stopped talking after being asked a second time and the class was only momentarily disrupted." *Id.* at 455, 405 S.E.2d at 799. Likewise, in *In re Eller*, our Supreme Court reversed an adjudication of delinquency for disorderly conduct despite evidence showing the juvenile "[made] a move toward another student[ ]" while holding a nail in his hand and, in a separate incident, repeatedly struck a radiator, causing "a rattling, metallic noise" that distracted the other students. 331 N.C. at 715-16, 417 S.E.2d at 480-81.

We believe Annie's behavior in the present case was at least less egregious than the respondent-juvenile's behavior in *In re Brown*. Although Annie used vulgar

language like the student in *In re Pineault*, she did not physically accost a teacher like the respondent-juvenile in *In re Brown*. Moreover, the respondent-juvenile's behavior in *In re Brown* caused his teacher to have to temporarily abandon her classroom, but this was not sufficient to show a substantial interference with the operation of the school. *In re Brown*, 150 N.C. App. at 131, 562 S.E.2d at 586. Here, even if we presume Annie's behavior caused the two receptionists to temporarily "flee" the front office, we are constrained by our holding in *In re Brown* to conclude this is insufficient to hold Annie's behavior substantially interfered with the operation of the high school—particularly in light of the fact that no evidence was admitted to show any disruption in the school's operations as a result of the receptionists' absence. *See Powell*, 299 N.C. at 98, 261 S.E.2d at 117 ("If the evidence is sufficient only to raise a suspicion or conjecture as to . . . the commission of the offense . . . , the motion [to dismiss] should be allowed." (citations omitted)).

Here, as in the aforementioned cases, there was no evidence suggesting the incident was extended, significant, or required serious intervention to handle. *Cf. Humphreys*, 275 N.C. App. at 794, 853 S.E.2d at 793 (citations omitted). As the State concedes, no evidence was admitted as to the length of the incident at issue. Presuming the incident lasted no more than several minutes, as this Court did in *In re Brown*, there is a lack of evidence tending to show Annie caused a substantial interference with the operation of the school. 150 N.C. App. at 131, 562 S.E.2d at 586.

The State argues Annie's conduct "merited significant intervention from three school principals and a school resource officer[,]" but AP Winkler and AP White were already speaking with Annie prior to the conduct at issue. The head principal entered AP White's office and repeatedly told Annie to calm down, but there was no evidence that Annie's behavior required that she be restrained or detained, as in *In re Pineault*; to the contrary, the uncontroverted evidence shows Annie remained seated throughout the duration of the incident. Further, although a third assistant principal stepped in AP White's office to see what was going on, he left when he saw the other administrators were present. Notably, every administrator involved held an office near or adjacent to where the incident took place, and the assistant principals—and presumably the school resource officer—each handle student discipline as part of their administrative duties.

Considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, *Rose*, 339 N.C. at 192, 451 S.E.2d at 223 (citation omitted), the evidence is insufficient to show Annie committed a substantial interference with the operation of the school. Rather, Annie's conduct resembles what this Court has described as a "momentary lapse[ ] in behavior[,]" as opposed to behavior warranting a conviction for Disorderly Conduct. *In re Brown*, 150 N.C. App. at 131, 562 S.E.2d at 586. Based on the limited set of facts before us, we cannot say the evidence shows Annie's behavior was "more than ordinary misbehavior or rule-breaking." *In re S.M.*, 190 N.C. App. at 584, 660 S.E.2d at 656.

IN RE: A.B.T.

*Opinion of the Court*

Thus, there was insufficient evidence Annie's conduct caused a substantial interference with or disruption of the operation of the school. Therefore, there was insufficient evidence Annie disturbed the peace, order, or discipline at the school. Consequently, the evidence was insufficient to support the Adjudication for Disorderly Conduct.

## Conclusion

Accordingly, for the foregoing reasons, we reverse the Adjudication and Disposition Orders.[5] Additionally, we vacate the Order on Motions for Review and remand for a new hearing on the Motions for Review in light of our conclusion that there was insufficient evidence to support the Adjudication for Disorderly Conduct.

REVERSED IN PART; VACATED IN PART.

Judges ZACHARY and WOOD concur.

Report per Rule 30(e).

---

[5] Because we determine there is insufficient evidence to support the Adjudication, we do not address Annie's arguments as to whether N.C. Gen. Stat. § 14-288.4(a)(6) is unconstitutionally vague or whether the trial court failed to make sufficient findings in the Disposition Order.